MURTHA & SCHMOHL CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 17911. Promulgated September 24, 1929.

*Benjamin Mahler, Esq.*, for the petitioner.
*J. E. Marshall, Esq.*, and *C. L. Lavendar, Esq.*, for the respondent.

444

OPINION.

MORRIS: The first issue raised by the parties is with respect to the respondent's treatment of the petitioner as the parent company instead of its affiliated company, the Emandess Holding Co., and in computing the net income of the affiliated companies on the basis of a fiscal year ended July 31, 1921, instead of a calendar year basis ended December 31 of that year.

It appears from the record that both of these companies kept their books of account on the accrual basis and that the petitioner's books were on a fiscal year basis, while those of its affiliated company were on a calendar year basis. Therefore, what the petitioner contends for is that the respondent was in error in adopting the fiscal year basis, instead of the calendar year basis.

Section 232 of the Revenue Act of 1921 provides that the net income of a corporation "shall be computed on the same basis as is provided in subdivision (b) of section 212 or in section 226." Subdivision (b) of section 212 of that Act provides that "The net income shall be computed upon the basis of the taxpayer's annual ac-

counting period (fiscal year or calendar year, as the case may be) in accordance with the method of accounting regularly employed in keeping the books of such taxpayer; but if no such method of accounting has been so employed, or if the method employed does not clearly reflect the income, the computation shall be made upon such basis and in such manner as in the opinion of the Commissioner does clearly reflect the income."

Therefore, whether the basis adopted by the petitioner in filing its consolidated return is correct or whether the respondent was justified in changing the basis from a calendar year to a fiscal year depends, in our opinion, upon which of the two bases will "clearly reflect the income," for the period in controversy. The respondent saw fit to change the basis adopted by petitioner, apparently because it did not in his opinion clearly reflect the true net income and in so far as we are concerned his determination is prima facie correct and so being the burden is upon the petitioner to establish the contrary. The petitioner has neither shown that the basis employed by the respondent was incorrect because it does not clearly reflect the true net income of the consolidated group, nor that the method which it contends for will more nearly reflect its net income. Indeed, the evidence adduced by the petitioner, if it establishes anything at all in that respect, it is that the basis adopted by the respondent should be approved. We have before us the balance sheets and income and expense statements for the year ended December 31, 1921, from which we may easily conclude that the consolidated return should conform to the petitioner's basis rather than that of its affiliated company. The affiliated company's balance sheet carries among its assets certain tenement properties to which we have referred in our findings of fact hereinbefore, and its liabilities consist merely of mortgages and amounts of that company's obligations to the various stockholders and Murtha and Schmohl, its parent. The balance sheet of the petitioner, on the other hand, consists of accounts receivable, bills receivable, equipment, investments, automobile stock and inventories on hand in the 14th Street yard and in the 109th Street yard. Therefore, since the accounts of the petitioner appear to be decidedly more complicated than those of its affiliated company, and its income more difficult to determine because of the necessity for computing inventories, it is reasonable to assume, in the absence of evidence to the contrary, that the less complicated method should yield to the more complicated and be adopted by the consolidated group in computing its net income for the purpose of income tax. The respondent's determination with respect to this issue, must, therefore, be approved.

With respect to the valuation of buildings owned by the Emandess Holding Co., certain improvements erected by the petitioner on

leasehold property and the valuation of two leaseholds owned or alleged to have been owned by the petitioner in 1913, we have the testimony of Herman W. Sternburgh and Morris Rosenthal, two real estate operators, and that of William H. Schmohl, Jr. Because of Rosenthal's obvious lack of familiarity with the properties in controversy in 1913 and because of his absolute refusal to submit to proper and complete cross-examination by the respondent's counsel, his testimony is of little if any value and must be disregarded. On cross-examination when he was asked why he had at first testified that one of the leaseholds was worth $30,000 and later that it was worth $50,000, said that it was because he did not know that it had water front rights. How an expert, knowing all of the important elements entering into the value of properties about which he testifies can possibly overlook the most valuable element attaching to this property, is beyond our comprehension. He testified that he had never personally bought leases of similar property in that neighborhood in 1913 and did not recall whether his employees had or not. The respondent's counsel attempted to cross-examine the witness with respect to all properties testified to on direct examination and when asked for further details about the Rivington Street property he said " I don't want to repeat all this stuff. If I am going to have to do this, I will have to vamoose. I don't want to be made any fool out of here," and he thereupon refused flatly to answer the question propounded. Other questions were asked of the witness and he again either refused or replied that he had answered once before. Persistent efforts of counsel for the respondent to draw further answers from the witness met with further refusal. The respondent's counsel, tiring of this situation, asked the witness if he intended to persist in his refusals and the witness replied, "According to what questions you ask me." In order to learn the basis for the values used by the witness he was asked the condition of the premises in question in 1913 and the witness replied that he did not know. Throughout the taking of testimony the witness either made use of memoranda or his memory was prodded by counsel for the petitioner. He was asked, upon cross-examination, if he was able to place values on the various properties, concerning which he had testified, without reference to memoranda and he replied that he would have to look at the paper. The witness had said that he had appraised properties and had testified in court with respect to said appraisals but when counsel for the respondent asked him in what courts he had so testified, the witness replied, " Oh, that is years ago, I don't recall; a long time ago." From these brief but pertinent comments with respect to witness Rosenthal, it must be perfectly obvious that his testimony should be disregarded.

Considering the fact that the tenement buildings owned by the affiliated company were acquired at or about the time of the so-called panic of 1907 and the fact that they were acquired through foreclosure proceedings, and doubtless at a much lower cost than had they been purchased in the open market during the succeeding and more prosperous years between 1907 and 1913, and the testimony of witnesses Sternburgh and Schmohl, we are of the opinion, and have so found as a fact, that the aggregate value thereof on March 1, 1913, was $500,000.

We are not satisfied from the evidence, however, that the 2 per cent rate of depreciation used by the respondent was incorrect. Schmohl testified that some of these properties had a useful life of 30 years and others of 40 years beyond March 1, 1913, and he testified that his meaning of useful life was that the " building will be in such bad shape that you may as well rip it down as to go on and make alterations and put it back into the shape it was originally." He was asked if at the end of 30 and 40 year periods it would be necessary for the taxpayer to reconstruct the foundations and he said it would all depend upon the class of construction going on in New York City at that time, that is, possibly there will be new regulations requiring a different structure altogether. In other words, the witness anticipated what the authorities of New York might require at the end of the 30 or 40-year periods. The witness was asked to anticipate or assume that the laws would not require any change and whether under those circumstances those buildings would last longer than 30 or 40 years, and he replied that they would possibly last 50 or 60 years, but that because of their condition you could not exact the same rent for them. There is no showing that the rent that could be exacted would not be an economic return upon the investment necessitating destruction of the building; therefore, in view of this testimony we must sustain the rate used by the respondent in the computation of depreciation.

Allegation of error numbered three herein was conceded by respondent's counsel at the hearing of this proceeding, except that the amount should be $9,368.30 instead of $9,386.30. He also admitted the error set forth in allegation of error numbered five, but only to the extent of $3,694.90.

The respondent refused to include $822.77 and $1,607.85, overassessments for 1917 and 1919, in the petitioner's invested capital for the period in controversy, on the ground that said overassessments are barred by the statute of limitations. In *National Products Co.*, 11 B. T. A. 511 (affd. U. S. C. C. A., 3d Cir., Aug. 29, 1929), and *Lancaster Lens Co.*, 10 B. T. A. 1153, we held that invested capital of those petitioners should not be reduced by amounts of deficiencies

for prior years which were barred by the statute of limitations. Although those opinions do not specifically state the reason for the conclusion reached it must be apparent. There the taxpayer's invested capital had not been impaired, but was as though no deficiency had ever been asserted by the respondent. In the instant case the deficiencies in tax were in fact asserted and collected and were later, but not until after the period of limitations had expired on the right to recover, found by the respondent to have been excessive. Invested capital of the petitioner was consequently reduced by the amounts of the outlawed portion of the overpayment which has not and can not be recovered. We are, therefore, of the opinion that the petitioner's invested capital should not be increased by said amounts.

No evidence having been offered by the petitioner with respect to the value of its leasehold at the date of its acquisition, the respondent's failure to allow a value for invested capital purposes is approved.

The sixth allegation of error herein is with respect to the value of a certain leasehold on East River property in the City of New York occupied by the petitioner. Said lease was entered into in May, 1905, prior to the organization of the petitioner, between the lessor, on the one hand, and the four organizers and stockholders of the company, on the other hand, as individuals.

Even assuming that the petitioner was the owner of the leasehold in question or at least had an exhaustible property right therein on March 1, 1913, a question we do not decide, although no assignment of the lease was ever made by the individual lessees to the corporation, we are of the opinion that the contention of the petitioner can not be sustained for the reason that the evidence does not convince us that there was a lease on the premises upon which an exhaustible value could be predicated beyond the life of the original lease which expired on May 1, 1915, prior to the taxable year in controversy. Of course the petitioner contends that it occupied the premises under an oral lease after May 1, 1915, for an additional period of 10 years, but the testimony in support of this contention falls far short of establishing that fact. It is shown by the record, and we have found as a fact, that in 1908 or 1909 the petitioner was negotiating for a lease on vacant property adjoining the property covered by this leasehold and that prior to consummating said lease the matter of a renewal of the lease upon the premises already occupied was taken up with the lessor, by William H. Schmohl and his son, at which time they were assured that they could lease the premises for an additional period of 10 years at the same rental upon the expiration of the then existing lease. Although the testimony is clear that they were so assured, there is no satisfactory showing that any oral agreement was ever

entered into upon the expiration of the lease which expired in May, 1915. We can not assume that because the petitioner continued in possession after May, 1915, that it had an enforceable lease upon the premises for an additional period of 10 years. Having so determined, it is unnecessary for us to go into the question of value of said lease-hold, and we, therefore, sustain the findings of the respondent in this particular.

The seventh allegation of error herein is with respect to the respondent's failure to allow a March 1, 1913, value upon the so-called Handley lease entered into in 1909. Schmohl's uncorroborated testimony was that that lease had a value on March 1, 1913, of $6,000, based upon the fact, as he said, that the petitioner paid $1,200 rental, whereas he thought it was reasonably worth $1,800 per annum. There is no satisfactory showing that the property was in fact worth $1,800 a year instead of the stipulated rental of $1,200, and since the value testified to by that witness is unsupported by sufficient detail disclosing the basis upon which the value is predicated, and since the value itself is uncorroborated by further testimony, we must sustain the respondent's findings with respect thereto.

In view of the fact that the petitioner's counsel expressly waived allegation of error numbered eight herein, in so far as it pertained to invested capital, and no evidence having been offered with respect to exhaustion contended for therein, the findings of the respondent must be sustained in that particular.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*