FEDERAL STREET AND PLEASANT VALLEY PASSENGER RAILWAY COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 29758.   Promulgated October 2, 1931.

*Frank C. Miller, C. P. A.*, for the petitioner.
*J. L. Backstrom, Esq.*, for the respondent.

OPINION.

MURDOCK: The Commissioner determined deficiencies in the petitioner's income taxes for 1919, 1920, 1921, 1922 and 1923 in the respective amounts of $220.63, $1,235.42, $219.32, $405.54 and $511.57. The amended petition contains four assignments of error, but two of these have been abandoned. The two remaining assignments relate to invested capital; and, since an excess-profits tax has been determined for but one year, 1920, the adjudication of these questions will affect only the deficiency determination for that year.

The parties have entered into, and submitted in evidence, a written stipulation of facts. The stipulation is so lengthy that to include it verbatim would unnecessarily extend this report. Therefore, it is incorporated herein by reference.

The first question for our consideration is whether the Commissioner erred in excluding from the computation of invested capital for 1920 overassessments of $3,424.60 and $1,593.44, for 1917 and 1918, respectively, notice of which was given the petitioner in the deficiency notice which forms the basis for this proceeding. The petitioner made no offer of proof that the allowance of the overassessments was not barred by the statutory period of limitations, but its position, as set forth in the brief, is that such overassessments were not barred by the statute of limitations at January 1, 1920, the basic date for the determination of invested capital for 1920, and invested capital should not be determined with reference to an event which occurred some four or five years later. The deficiency notice fixed April 1, 1926, as the date when the overassessments in question would become barred by operation of the provisions of section 284(g) and it may be assumed that these overassessments were not barred at any time during 1920. Nevertheless, following *Murtha & Schmohl Co.*, 17 B. T. A. 442, we sustain the Commissioner on this point.

The other question for our consideration is whether the respondent erred in failing to include, in the computation of invested capital for 1920, the fair cash value of the obligation of the lessee of the petitioner's railroad properties to discharge the petitioner's funded debt when it matured. From the stipulated facts it appears that by a written agreement dated July 20, 1896, the petitioner leased all of its railroad properties to the North Side Traction Company (hereinafter referred to as the lessee) for a term of 950 years; under the covenants of the agreement, the lessee undertook to operate, work, use and run, and keep in public use the demised railways, to maintain said demised railways, property and premises, at its own expense, in good repair, working order and condition, and supplied with such rolling stock, equipment and other appliances as should

be reasonably required for its operation; to indemnify, save and keep harmless the petitioner from all costs, charges and expenses arising from the management and operation of the railways; to pay the bridge tolls agreed to be paid by the petitioner; to perform all covenants and agreements made by the petitioner with other companies; to pay to the petitioner an annual rental of $70,000, payable in semiannual installments of $35,000 on the 15th days of January and July throughout the term of the lease; to pay a further sum of $500 per annum, payable in equal semiannual installments, for the purpose of defraying the expense of maintaining the petitioner's corporate existence; to assume all of the floating debts of the petitioner to an amount not exceeding $175,000, when and wherever the same might become due and payable; to pay all taxes and assessments and water rents which might be assessed upon the petitioner's properties, franchises, capital stock, business, rental, income and indebtedness, or upon any of the lines of railway leased, operated or controlled by the petitioner; to " *pay at maturity the principal and interest* " *of $1,250,000 par value of bonds theretofore issued by the petitioner and then outstanding;* to assume the petitioner's guarantee as to the payment of the principal and interest of certain other bonds; to insure the demised properties against loss from fire, paying the premiums therefor from its own funds; and, upon the expiration of the lease, to yield and deliver up to the petitioner the demised railways and properties, with their appurtenances, in the same good order and repair as they were in when received by the lessee, or might be put in during the term of the lease, reasonable wear and tear excepted.

By a written agreement dated January 27, 1897, the lessee, with the assent and concurrence of the petitioner, leased all of its properties, including all properties which it held under lease agreements, to the Second Avenue Traction Company for a term of 949 years, the latter assuming all of the lessee's obligations to the petitioner under the agreement of July 20, 1896, except the lessee's obligation to assume all of the floating debts of the petitioner to an amount not exceeding $175,000, which indebtedness was to be paid by the lessee out of the proceeds from the sale of its own securities; by a written agreement, dated June 29, 1897, the Second Avenue Traction Company sold, assigned, set over and conveyed to the United Traction Company of Pittsburgh all of its right, title and interest in and to the leasehold estate in the properties of the petitioner, the purchaser agreeing to perform all the conditions and covenants in all leases theretofore entered into by the seller; by a written agreement, dated June 28, 1897, the lessee (North Side Traction Company) sold, assigned, set over and conveyed to the United Traction Company of Pittsburgh all of its rights, title and interest

in and to the leasehold estate in the properties of the petitioner, as evidenced by the agreement of July 20, 1896, the purchaser agreeing to perform all of the covenants and obligations of the lessee contained in that agreement; on July 31, 1897, the United Traction Company of Pittsburgh had recorded on its books, as a part of its funded debt, its liability to pay and discharge the funded debt of the petitioner, in the amount of $1,250,000, and such liability was carried on the books at December 31, 1920, and was shown in a balance sheet of the United Traction Company of Pittsburgh, as of the latter date, which has been filed with, and not modified by, the Public Service Commission of the Commonwealth of Pennsylvania; and the total amount of interest which has been paid on the petitioner's funded debt, during the period July 1, 1896, to January 1, 1930, by the parties to the aforementioned agreements, other than the petitioner, is $2,089,955.83.

In the provision of the original lease wherein the lessee agreed to pay at maturity the prinicipal and interest of all bonds theretofore issued by the petitioner and then outstanding, there was set forth in tabular form a description of the bonds to which the provision related. These bonds matured at various dates from July 1, 1903, to May 1, 1942. Under the table there was a statement as follows:

The above issues are covered by and are being exchanged into an issue of like amount, viz:—1,250 Bonds of $1,000.00 each, $1,250,000.00 dated May 1, 1892 and maturing May 1, 1942.

From oral and documentary evidence presented at the hearing, it appears, further, that from the time of the petitioner's organization, in 1871, to July 20, 1896, no item of income or expense was recorded on the petitioner's books unless and until there was an actual receipt or disbursement of cash; on July 21, 1897, entries were made in the journal and properly posted to the general ledger, recording, as of July 21, 1896, all of the petitioner's liabilities and all amounts due to the petitioner which were outstanding on the latter date, and which affected the operating revenue and expense accounts; the petitioner ceased to be an operating company upon execution of the lease agreement of July 20, 1896, and thereafter maintained the status of a nonoperating company; after July 20, 1896, the petitioner's business transactions amounted only to the receipt of rentals for its properties and the distribution of dividends; rentals and dividends were recorded on the books as they were received and disbursed, respectively; the time of the receipt of all rentals and the disbursement of all dividends was such that the time for making each entry on the books would have been the same regardless of whether the books were kept on a cash or an accrual basis; there was no change after 1896 in the method of accounting employed in

keeping the petitioner's books; the petitioner has not recorded on its books any income, as such, which may have been derived from its lessee's assumed obligation to pay and discharge, at maturity, the principal of the petitioner's funded debt amounting to $1,250,000; and the Commissioner has not included in his computation of invested capital for 1920, as earned surplus or otherwise, any amount representing the fair cash value of the lessee's agreement to assume the petitioner's obligation on its bonds at the date of the execution of the lease agreement.

Based upon the foregoing facts and circumstances, the petitioner contends that the lessee's agreement to pay its (the petitioner's) funded debt amounting to $1,250,000 at maturity represented a bonus payment, in addition to the reserved rentals, for the lease; the assumption of this obligation by the lessee was income to the petitioner when the lease was executed in 1896; and the fair cash value of that agreement, as of the date the lease was executed, should be included as an asset in computing earned surplus for invested capital purposes. The respondent contends that the petitioner's books have been kept consistently upon the cash receipts and disbursements basis, and, upon that basis of accounting, the obligation of the lessee is not income to the petitioner until it is actually paid and discharged by the lessee; and regardless of the method of accounting employed in keeping the books, the obligation of the lessee could not be considered income to the petitioner prior to the time it is discharged, because " the lease discloses that the lease must be performed before the petitioner is entitled to have its funded debt paid on its behalf."

Subdivision (3) of section 326(a) of the Revenue Act of 1918 provides that invested capital includes " paid-in or earned surplus and undivided profits; not including surplus and undivided profits earned during the year." The following cases adhere to the rule that the amount of earned surplus and undivided profits to be included in the invested capital of any taxable year must be determined in the light of the method of accounting properly employed in keeping the taxpayer's books for that taxable year. *Blum's, Inc.*, 7 B. T. A. 737; *New England Furniture & Carpet Co.*, 9 B. T. A. 334; *J. B. Bradford Piano Co.*, 15 B. T. A. 1045; *Jacob Brothers Co.*, 19 B. T. A. 59, decision reversed but this principle upheld, 50 Fed. (2d) 395; *S. Davidson & Brothers, Inc.*, 21 B. T. A. 638; *Tull & Gibbs, Inc.*, 21 B. T. A. 1073; *John M. Brant* v. *United States*, 40 Fed. (2d) 126; and *Tull & Gibbs, Inc.*, 48 Fed. (2d) 148, decided March 16, 1931, by Circuit Court of Appeals for the Ninth Circuit, affirming decision of the District Court for the Eastern District of Washington. Therefore, whatever the method of accounting employed in keeping the petitioner's books in 1896 and 1897, its right to have the fair cash value of its lessee's obligation, as of the date of execution of the lease,

included in invested capital is dependent upon the method of keeping its books and computing net income for 1920.

From 1871 to 1896 the net income of this petitioner may have been computed on the books on the basis of cash receipts and disbursements, but thereafter, it has been computed upon an accrual basis. An examination of the profit and loss account and its supporting primary accounts discloses that during the earlier period no item of income or expense was taken into the computation of net income unless actually received or disbursed. During that period there were numerous items, such as discount, interest, insurance, taxes, rent and pay roll which perhaps should have been recorded as belonging to different periods, had the books been kept upon an accrual basis. But whatever the method used prior to 1896, it is reasonably clear that in that year the books were placed upon an accrual basis and there has been no subsequent change in that basis. In 1896 and 1897 appropriate entries were made in the journal, and properly posted to the general ledger, for the purpose of recording all receivables and payables affecting the operating revenue and expense accounts, and the result thereof was to place the computation of net income upon an accrual basis. It is true, of course, that the total of such receivables and payables was a comparatively small amount, but that was not surprising, since the petitioner's business was the operation of a street railway. After 1896 the petitioner's business transactions were entirely of a cash nature. Rentals and dividends were recorded on the books as received and disbursed, but the time of their receipt and disbursement was such that they would have been recorded in the same way whether the books were kept on a cash or an accrual basis. The occasion for entering any accrual on the books after 1896 and 1897 did not arise, but that does not serve to change the character of the basis. Our conclusion is that the petitioner's books were kept upon an accrual basis in 1920. Accordingly, as we have previously pointed out, the earned surplus and undivided profits to be included in invested capital for 1920, must be determined upon an accrual basis.

The petitioner claims that it should have accrued as income $1,250,-000 when the lease was entered into representing the lessee's promise to pay the interest and principal of the bonds at maturity. It cites *Boston & Providence Railroad Corporation* v. *United States*, 31 Fed. (2d) 594; affd., 37 Fed. (2d) 670, as authority. This case is strikingly similar, but the present case can not go to that Circuit, and since we can not agree with the reasoning of the *Boston &, Providence* case, we must, with all due respect, decline to follow it. Perhaps the two cases are distinguishable, since here there is no provision for a sinking fund, while there there was.

A number of cases have been decided in which a lessee has made improvements to leased premises. In some of these cases the Board has held that the value of the improvement at the time made was income to be reported ratably over the remaining life of the lease. *Shelby D. Scott*, 9 B. T. A. 1219; *Joseph L. B. Alexander et al.*, 13 B. T. A. 1169. In *Gilbert Butler et al.*, 4 B. T. A. 756, the Board held that improvements to a leased mine were income to the lessor upon the termination of the lease, whereas, in *Henry I. Brown*, 4 B. T. A. 1129, comparable improvements were held to be income when made. *Miller* v. *Gearin*, 258 Fed. 225 (certiorari denied, 250 U. S. 667), and *Cryan* v. *Wardell*, 263 Fed. 248, are authority for the proposition that improvements made to leased property by a lessee prior to March 1, 1913, are not thereafter income to the lessor. In some of these cases there were agreements in the leases requiring the lessee to make the improvements, but income was not considered to have accrued or been received prior to the time when the improvements were actually made.

Such improvements were held no part of invested capital in *Julia Building Association*, 3 B. T. A. 333. Furthermore, in the case of a sale of property subject to a mortgage, the profit can not be computed until the benefit from the purchaser's agreement to pay the mortgage is recognized. A number of specific provisions of the revenue acts govern the computation and reporting of the gain from sales. These provisions usually require that the gain be accrued and reported for the year of the sale. But here we have a lease, and leases are not sales. The consideration for a lease is called rent. Cf. *Nelson Land & Oil Co.*, 3 B. T. A. 315. Rent is all profit and is all reported as gross income without being first offset by the cost of the property. It is only accrued and reported as income as it is earned or becomes due. In the year 1920 the date had not yet arrived upon which the lessee was to fulfill its promise and agreement to pay the principal of the petitioner's bonded indebtedness. The promise of the lessee was not negotiable and, unlike promissory notes, was not to be accrued in its entirety, at least, when given. Cf. *Commissioner* v. *Garber*, 50 Fed. (2d) 588; *James M. Butler*, 19 B. T. A. 718. This rent payment was not yet due and had not been paid in advance. Not being due, it should not be accrued on the promise alone. Cf. *Bedell* v. *Commissioner*, 30 Fed. (2d) 622. When was it earned? The petitioner has not accounted for the item as either accrued or earned and we can not say precisely to what extent it was earned on January 1, 1920. Where income is earned ratably over a term, but payments become due at times unrelated to the period when earned, good accounting may require that the payments be accrued as earned. Cf. *Madison & Kedzie State Bank*, 1 B. T. A. 922. A similar principle has been applied occasionally in reporting income and in deducting

expenses on the ground that it enables income to be more clearly reflected on an annual basis. *Shelby D. Scott, supra; Joseph L. B. Alexander, supra; Fall River Electric Light Co.*, 23 B. T. A. 168; *S. & L. Building Corporation*, 19 B. T. A. 788; *United States Playing Card Co.*, 15 B. T. A. 975; *Chicago Acceptance Co.*, 12 B. T. A. 150; *Western Exchange Bank*, 12 B. T. A. 66; *Chicago, Rock Island & Pacific Railway Co.*, 13 B. T. A. 988, affirmed on several points and reversed on one, 47 Fed. (2d) 990. But here accrual should not be delayed after the date of actual receipt. *Automobile Underwriters, Inc.*, 19 B. T. A. 1160. Following these decisions, we hold that the petitioner should have accrued as income in each year a proportionate part of the $1,250,000 over the expected life of the bonds, 46 years, beginning July 20, 1896, thus increasing earned surplus as of January 1, 1920.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*

SMITH, STERNHAGEN, and McMAHON dissent.

---

TRAMMELL, dissenting: In my opinion, the Circuit Court of Appeals for the First Circuit, in the case of *Boston & Providence Railroad Co.* v. *United States, supra*, has correctly answered the question as to the assumption of the bonded indebtedness. Aside from that decision, I think the entire amount should be included in invested capital. The corporation was enriched by the amount of assumed obligations prior to any taxable period.