Charles E. White v. Commissioner.
White v. Commissioner
Docket No. 21041.
United States Tax Court
1951 Tax Ct. Memo LEXIS 61; 10 T.C.M. (CCH) 1014; T.C.M. (RIA) 51316; October 24, 1951
*61 Petitioner operated a restaurant and bar; bought, sold, and rented real property; loaned money on mortgages; and furnished bail for persons arrested. Books were kept showing receipts and disbursements of the restaurant and bar. No records of his other income or expenses were produced. Respondent computed income from the increases in petitioner's net worth from year to year and asserted penalties for fraud. Held, petitioner failed to prove error in respondent's computations of net worth and determinations of deficiencies. Held, further, respondent has established that at least part of the deficiency for each year was due to fraud with intent to evade tax. Henry D. O'Connor, Esq., 624 Widener Bldg., Philadelphia, Pa., for the petitioner. John A. Newton, Esq., and W. Morgan Hunter, Esq., for the respondent. TIETJENS
Memorandum Findings of Fact and Opinion TIETJENS, Judge: Respondent determined deficiencies and 50 per cent fraud penalties against petitioner as follows: Year
Deficiency
Penalty
1942
$ 1,677.64
$ 838.82
1943
10,343.23
5,171.62
1944
13,586.52
6,793.26
1945
2,628.57
1,314.29
The issues are whether petitioner omitted *62 from his income tax returns filed for these years substantial amounts of income realized in those years and whether any part of the deficiency in each year was due to fraud with intent to evade tax. Petitioner filed individual income tax returns for the above years with the collector of internal revenue at Philadelphia, Pennsylvania. Findings of Fact Petitioner is a resident of Chester, Pennsylvania. During the taxable years he operated a restaurant and bar or taproom known as Edgmont Beer Garden, in Chester. He also bought, sold, and rented real property; loaned money on mortgages; and furnished bail for persons arrested. He commenced operation of the restaurant and taproom in 1934 under a restaurant liquor license issued by the Pennsylvania Liquor Control Board. At that time he was about 36 years of age. Under the regulations of the Control Board licensees were required to keep records covering the operation of the licensed business. Petitioner maintained two cash registers, one for the bar and the other for the restaurant sales. His receipts and expenditures relating to the retaurant and taproom were recorded on loose leaf columnar sheets. The purchases of liquors there *63 recorded are substantially in agreement with the records of the State Liquor Stores. According to petitioner's records, the gross profits on the bar business were the following percentages of purchases: 52.1 in 1942; 58.6 in 1943; 90.1 in 1944; and 105.1 in 1945. Petitioner's records of the restaurant and taproom business showed the following totals for the taxable years: Total
Total
Year
Receipts
Expenses
Profit
1942
$41,820.37
$37,896.38
$ 3,923.99
1943
64,991.26
54,676.52
10,314.74
1944
61,956.45
47,174.32
14,782.13
1945
52,686.46
39,709.48
12,976.98
These records do not show petitioner's income from other sources. Nor do they show his assets or liabilities as of any given date. They do not record his payment of income taxes. Some of petitioner's personal expenses, such as gas, electricity, and plumbing repairs at his home, are shown on these records. Petitioner did not produce any records showing his income from bail furnished, or from rental of real estate. Petitioner furnished bail in the Quarter Sessions Court of Delaware County at Media, Pennsylvania, for various persons arrested. Until about the middle of 1944 petitioner *64 furnished bail on real estate security. Thereafter, cash bail was deposited in some cases and real estate used as security in others. Records of the Clerk of that Court show the following: Number of Days
On Which Bail
Total Bail
Year
Was Entered
For Year
1940
4
$ 2,600
1941
6
3,200
1942
12
9,900
1943
34
22,300
1944
79
48,200
1945
60
44,300
Petitioner had cash bail on deposit in that Court amounting to $13,500 on December 31, 1944, and $5,625 on December 31, 1945. In addition, petitioner furnished cash bail for persons in the Police Court at Chester. Petitioner loaned money on mortgages. The following schedule shows the principal amounts loaned and unpaid as of December 31, in the years indicated: Mortgagors
1941
1942
1943
1944
1945
Caranci
$1,300
$1,000
$1,000
$ 1,000
$ 1,000
Fillipone
2,000
2,000
500
Bush
500
Di Santo
750
Scaricki
2,000
Billantine
2,100
Garvey
1,600
1,600
1,600
Desmond
5,800
5,800
Keenan
10,000
17,000
Reist
4,500
Boulden
5,000
Quinn
3,400
$4,550
$3,000
$7,200
$18,400
$38,300
Petitioner's income *65 tax returns for 1942, 1943, and 1944 were prepared by C. J. Powers who was in the real estate, insurance, and accounting business. Powers did not examine petitioner's books or records. In preparing the returns Powers entered figures read to him by petitioner from his books and other records. Petitioner's income tax return for 1945 was prepared by J. F. Hawkins, public accountant. Hawkins kept petitioner's restaurant books from August 1945 and made up the figures on that business from petitioner's loose leaf record. The figures as to other income and expenses were entered from information given Hawkins by petitioner. No written records of the amount of bail entered were shown to Hawkins. Petitioner's federal income tax return for 1941 reported no tax due. His returns for the taxable years reported the following: 1942
1943
1944
1945
Business receipts
$ 41,765.37
$ 59,996.26
$ 61,956.45
$ 52,686.46
Merchandise Bought
32,849.82
48,076.34
38,970.00
31,167.49
Gross profit-business
8,446.69
11,648.22
19,288.76
20,251.80
Net profit-business
3,792.41
5,298.10
11,096.77
12,214.48
Dividends and Interest
150.00
120.00
1,213.50
1,364.50
Bail bond fees
1,625.00
2,157.00
Personal service
300.00
Bail lost
2,800.00
1/2 Capital Gains
612.50
Rent
1,069.00
1,468.00
3,751.00
3,936.00
Rent net profit
197.27
435.54
986.55
Rent net loss
150.13
Total Income
4,139.68
5,567.97
14,370.81
14,535.03
Net Income
4,024.79
5,427.97
13,870.81
14,035.03
Victory Tax Net Income
5,567.97
Income Tax (plus V.T.)
252.71
817.83
3,752.03
4,036.11
Victory Tax
133.49
Forgiven Tax
189.53
*66 In May 1939 petitioner applied to the Delaware County National Bank, Chester, Pennsylvania, for a loan, which was refused on the stated ground that the collateral security offered was not satisfactory. In August 1939 he borrowed $200 from his bank, giving collateral security. In November he borrowed $750, secured by collateral, and thereafter borrowed various amounts from the bank on collateral security. The security given was in the form of mortgages on real estate or United States bonds. Petitioner borrowed $500 in November 1941, and paid off that loan by March 1942. In April 1942 he borrowed $400 on the security of U.S. Treasury Bonds. In June 1942 he increased the borrowing to $900 and in September 1942 to $1,100. The maximum borrowings thereafter were: in 1943 - $2,500; in 1944 - $9,500; in 1945 - $10,000. Petitioner sold a parcel of real estate on McIlvaine Street, in Chester, in 1937, for $1,600. In 1939 he sold a parcel on State Street for $950, and a parcel at 240 W. 4th Street, for $3,000. In July 1941 he sold a parcel at 226 W. 4th Street for $450 cash and a mortgage of $2,000. In 1939 he loaned Joseph Caranci $1,300 and one Di Santo, $750 on mortgages and in 1941 loaned *67 Virginia Bush $500 on a mortgage. In 1939 he bought a parcel on E. State Street for $1,000 cash. In 1940 he bought a double house on Union Street for $1,400, giving a mortgage, and a parcel on 3rd Street for $1,800. He bought a parcel at 224 W. 4th Street for $2,000 cash prior to the end of 1941. During the taxable years he bought and sold various parcels. Petitioner's father, Ashley D. White, moved with his family to Chester in 1917 from Mecklenburg County, Virginia. At that time he made a down payment on a house, the price of which was not over $3,000. From 1930 to 1941 his annual earnings were approximately $1,000. In 1934 he loaned petitioner money to get a restaurant license. In 1945 he sold his house and gave his daughter $3,000 with which to buy another house. Subsequently he lived with his daughter. He died in 1948. Petitioner's brother Ernest knew of no property his father had, other than the home, and had no knowledge of any large amount of cash owned by his father at any time. Petitioner owned the following assets as of December 31, in the years indicated: 1941
1942
1943
1944
1945
U.S. Bonds (cost)
$ 1,000.00
$ 1,000.00
$ 3,500.00
$ 15,000.00
$ 15,000.00
Bldg. and Loan Savings
665.00
1,990.77
10,254.59
1,180.00
2,240.00
Bank Account
500.46
648.00
936.00
303.08
1,656.27
Cash Bail on Deposit
13,500.00
5,625.00
Note Receivable
100.00
Net Equities in Real Estate
1,500.00
4,243.74
7,525.21
21,708.85
20,558.25
Mortgages Receivable
4,550.00
3,000.00
7,200.00
18,400.00
38,300.00
Fixtures less Depreciation
1,642.16
1,440.54
1,452.52
1,538.68
892.16
Merchandise Inventory
300.00
2,218.95
2,780.00
1,160.00
1,800.00
(Less Bank Loan)
(7,900.00)
(9,000.00)
Net Worth
10,157.62
14,542.00
33,648.32
64,890.61
77,171.68
*68 Respondent computed the annual increase in petitioner's net worth and the net taxable increase by adding $4,000 per year as representing petitioner's living expenses, plus the income taxes paid, to the net worth as computed above; as follows: 1942
1943
1944
1945
Net Worth 12/31
$ 14,542.00
$ 33,648.32
$ 64,890.61
$ 77,171.68
Personal Living Expenses
4,000.00
4,000.00
4,000.00
4,000.00
U.S. Income Tax
285.28
1,039.01
5,121.57
Adjusted Net Worth
18,542.00
37,933.60
69,929.61
86,293.25
Net Worth 1/1
10,157.62
14,542.00
33,648.32
64,890.61
Increase in Net Worth
8,384.38
23,391.60
36,281.29
21,402.64
Income Reported
4,024.79
5,567.97
14,370.81
14,535.03
Net Taxable Increase
4,359.59
17,823.63
21,910.48
6,867.61
Petitioner's living expenses amounted to not less than $4,000 in each of the taxable years. A part of the deficiency for each of the taxable years 1942, 1943, 1944, and 1945, was due to fraud with intent to evade tax. Opinion Respondent determined petitioner's tax liability for the years 1942, 1943, 1944, and 1945, by the "net worth" method. Petitioner produced records purporting to show the income and *69 expenses of his restaurant and taproom, but offered no records whatever to substantiate figures appearing on his returns disclosing income from other sources. Petitioner asserts that the returns show his entire income and that his income was derived from the restaurant and taproom, from loans secured by mortgages, from purchases and sales and rentals of real property, and from bail furnished for persons arrested. Respondent contends that petitioner's increase in net worth in each of the taxable years demonstrates that his real income was substantially in excess of the income reported. Petitioner admits that the 1943 return understated the taproom income by $4,995, and is unable to explain this discrepancy. The records being incomplete and inaccurate, at least in some particulars, resort may properly be had to the net worth method, Louis Halle, 7 T.C. 245 (1946); affirmed 175 Fed. (2d) 500, (C.A. 2, 1949); certiorari denied 338 U.S. 949 (1950). Respondent introduced computations showing petitioner's net worth, as ascertained by respondent's investigation, at the end of 1941 and at the end of each of the taxable years before us. Petitioner *70 conceded that these computations of assets were substantially correct, except in four particulars; namely (1) they did not show $15,000 in cash given petitioner by his father before 1942; (2) they did not show $10,000 in cash accumulated by petitioner prior to 1942; (3) they showed loans secured by mortgages at their face amount instead of showing the amount of principal due at the respective dates; and (4) they showed cash bail on deposit according to the record of the Clerk of the Court where it was deposited, whereas, petitioner argues that the full amount stated may not have been actually deposited. The first two objections go to the accuracy of the opening computation, that of December 31, 1941; the last two relate to items in the later computations, particularly at the end of 1944 or 1945. Petitioner also objects to the computations of income based upon the net worth figures, particularly with reference to the estimate of petitioner's living expenses in the taxable years. Petitioner asserts that he had $25,000 in cash on hand at the beginning of the year 1942. He testified that he was given $15,000 in 1940 or 1941 by his father, Ashley D. White; that from this fund he turned *71 over $10 per week to his father and paid some hospital bills; and that later he invested the money in Treasury Bonds and put the bonds in a safe deposit box. He also testified that he had another $10,000 in cash on hand on December 31, 1941; that this was principally acquired through the sale of certain properties between 1937 and 1941, and included $2,000 accumulated from other sources. He asserted that all the cash was in denominations of $20 or less and was placed in three one-gallon jars which were hidden in his home or his place of business. He produced witnesses to testify that he customarily had cash on hand in substantial amounts. This testimony is not convincing. The witnesses testified that petitioner had large amounts of cash in 1944 or later, but did not know whether he had large amounts of cash in 1941 or 1942. Petitioner did have $500.46 in a bank account at the beginning of 1942 and had borrowed at the Delaware County National Bank on several occasions since 1939. He was, therefore, not a person of the type unwilling to deal with banks, as is now contended. In November 1941 he borrowed $500 at the bank to be repaid at $100 per month. This was paid off in installments *72 by March 16, 1942. On April 13, 1942, he borrowed $400 more, on the security of Treasury Bonds, and later increased the debt to $900. If he had $25,000 in cash in small bills hidden about his premises, no reason appears or is suggested for the borrowing of these small amounts from the bank. The money he is said to have received from the sale of property during the years 1937 to 1941 was evidently not retained in cash because he invested in other property or loaned money or mortgages during those years. There is no corroboration of petitioner's story about this cash fund. Although petitioner's wife testified in the case she was not asked about the existence of the cash petitioner says was hidden in his home or place of business. The existence of such hoards could hardly escape her knowledge. The circumstances shown do not support the assertion that Ashley White, petitioner's father, gave petitioner $15,000 in cash in 1941. Ashley moved to Chester in 1917 with his family and then had enough money to make a down payment on a house, the price of which was not over $3,000. From 1930 to 1941 his annual earnings approximated $1,000. In 1934 he loaned petitioner money to get a restaurant license. *73 Petitioner's brother Ernest had no knowledge of the alleged gift to petitioner. His sister, who was said to have received some $3,000 from their father in 1945, did not testify. Petitioner has not shown error in the statement of his net worth as of December 31, 1941, as computed by respondent. Petitioner contends, next, that the computations at the end of the years 1944 and 1945 are not correct because they show mortgage loans at the original amount without taking into consideration their reduction by payments made on principal. The burden is upon petitioner to show respondent erred. Petitioner offered no records to establish what balances were owing on these dates. While he testified that some payments were made on principal of the loans generally, he could not state the total amounts paid on principal in any year or the balances owing at the end of any specified year. He said that some of the mortgages were paid in full, but could not say when. The mortgagors were not called as witnesses to show the payments or the balances at any given time. The respondent's computations do show some reductions and show some mortgages as having been paid off. Upon this record we cannot say that *74 petitioner has shown error in respondent's computations concerning the mortgage investments. Nor can we guess at the amounts due. There may have been instances in which unpaid interest would increase the amount owing. Petitioner has not shown error in including as an asset the amounts of cash bond recorded as on deposit with the Clerk of the Court. Petitioner did not testify affirmatively that these amounts were not actually deposited. His argument goes no further than to suggest that the records of the Clerk are not sufficient proof that these amounts were put up in cash. The burden of proof is on petitioner, however, and if he undertakes to contradict the Clerk's records he must present evidence to show them inaccurate. No evidence was presented tending to show that they did not represent actual deposits of cash. We accept the Clerk's record as sufficient. Since petitioner's attack upon the respondent's computations of the assets is not substantiated we accept respondent's figures as fairly showing petitioner's net worth as of the respective dates. From them the next step is to compute petitioner's income for the taxable years. Respondent's computations are shown in our findings. *75 The computations of income add to the increase in net worth the income taxes paid by petitioner plus an amount estimated as his living expenses for the year. Respondent estimates these living expenses at $4,000 per year. While petitioner's counsel argues that this figure is too large, there is not one word of testimony as to the true amount of petitioner's living expenses. On this record we are unable to find that petitioner has shown error in the respondent's calculation of income based upon the net worth. The deficiencies determined by the respondent are therefore sustained. Respondent found that the deficiencies were due to fraud with intent to evade tax and determined 50 per cent penalties accordingly. The burden is upon respondent to prove fraud. It is seldom possible to do this by direct proof. M. Rea Gano, 19 B.T.A. 518. The circumstances here shown establish that petitioner over a period of four years had a substantial annual increase in assets not accounted for by the income reported in his returns. The demonstrated increase in four years in net worth of over $65,000 exceeds greatly the taxable income of less than $40,000 reported on his returns, without taking *76 into account the items of living expenses and income tax payments which would have the effect of increasing the discrepancies. Even if effect were given to petitioner's objections to the computation, there is still a substantial, unexplained discrepancy. Such a consistent practice of understating his true income strongly evidences an intent to defraud the Government. Rogers v. Commissioner, 111 Fed. (2d) 987 (1940), affirming 38 B.T.A. 16 (1938); Arlette Coat Co., 14 T.C. 751 (1950). No satisfactory explanation of this failure to report actual income is offered. Petitioner asserts that he gave his records to the accountants for preparation of his returns and suggests that the records, except for the restaurant and taproom records, must have been lost through some carelessness on the part of the accountants. On the other hand, the accountants both declared that except for the restaurant and taproom books, no records were shown them, and the other amounts entered on the returns were furnished to them by petitioner. We find the testimony of the accountants more credible in this matter. We think respondent has met the burden and has shown that at *77 least some part of the deficiency for each year was due to fraud with intent to evade tax. Sections 293(b) and 1112, Internal Revenue Code. The respondent is sustained as to the penalties, also. Decision will be entered for the Respondent.