Constantine Thomas and Marie Thomas v. Commissioner.
Thomas v. Commissioner
Docket Nos. 47178, 47179.
United States Tax Court
T.C. Memo 1955-46; 1955 Tax Ct. Memo LEXIS 294; 14 T.C.M. (CCH) 156; T.C.M. (RIA) 55046; February 24, 1955
*294 Held: 1. Deficiencies determined by net worth and expenditures method sustained with minor adjustments. 2. Returns were false and fraudulent with intent to evade tax. John E. Maloney, Esq., for the petitioners. Burton L. Williams, Esq., for the respondent. TIETJENS
Memorandum Findings of Fact and Opinion TIETJENS, Judge: The respondent determined the following deficiencies and additions to tax for fraud for the years 1943 to 1948: Deficiency
Addition
Constantine Thomas
1943
$2,425.72
$1,212.86
1944
746.53
373.27
Constantine and
Marie Thomas
1945
6,853.75
3,426.88
1946
1,287.95
643.98
1947
7,329.34
3,664.67
1948
5,441.12
2,720.56 Constantine Thomas filed individual income tax returns for the calendar years 1943 and 1944. Constantine and Marie Thomas filed joint returns for the calendar years 1945 to 1948, inclusive. The returns were filed with the collector of internal revenue at Boston, Massachusetts. A stipulation of facts, with exhibits, was filed at the hearing, and testimony and other exhibits were introduced. The deficiencies were determined by the net worth and expenditures method. The computation *295 of net worth is agreed upon except for the amount of cash on hand at the beginning and end of each year. The issues are the amount of such cash on hand, whether the petitioners received nontaxable gifts, and whether any part of the deficiencies is due to fraud with intent to evade tax. Findings of Fact The petitioners are husband and wife. They reside in Chelmsford, Massachusetts. During the taxable years 1943 to 1948, inclusive, Constantine Thomas, sometimes known as Charles Thomas, owned 97 per cent, and Marie Thomas owned 2 per cent of the stock of Thomas, The Master Cleaner, Inc., hereinafter referred to as the corporation, a Massachusetts corporation doing business in Lowell, Massachusetts. Thomas was president and treasurer of the corporation and in complete control of the business carried on, which was dry cleaning and the sale of furs. The corporation filed Federal income tax returns with the collector of internal revenue at Boston upon the accrual basis and covering calendar years. Constantine Thomas was born in about 1894 and came to the United States from Greece at the age of 10 years. He has since resided in the United States. From about 1918 until about 1932 he *296 engaged in various business ventures including the taxicab business, dealing in used cars, operating a restaurant and investing in a hotel. In about 1929 he entered a dry cleaning business under the name of Highland Cleaners and Dyeing. He sold this after operating it for a year or two. Thomas also invested in stocks on margin or on borrowed funds and had an account with a brokerage firm in Boston. He borrowed from the Union National Bank of Lowell, or its predecessor. In 1932 the bank took over collateral on his loans and charged off $8,926.85 as a loss. In about 1932 Thomas started his present dry cleaning business. It was incorporated in February 1935. Constantine and Marie were married in 1938. Marie's father, Christo Vangos, was manager of a confectionery establishment in Easthampton. At the time of the marriage of the petitioners, Vangos gave them money to assist in buying a home. Marie helped Constantine in his business for about a year after their marriage. In 1940 the corporation sought a loan for $4,500 from the Reconstruction Finance Corporation (hereinafter referred to as the R.F.C.). The Union National Bank of Lowell agreed to participate up to 20 per cent in the *297 loan, provided the bank receive a compromise offer $400of in full payment of the loan to Thomas charged off in 1932 in the amount of $8,926.85. Thomas paid the amount of $400 in installments at the rate of $7 per month beginning in June 1940 and making a final payment of $148 in December 1943. The corporation's loan was reduced by installment payments to $3,586.83. It was paid on July 13, 1941, and a new loan of $5,400 was made. This was reduced by November 1942 to $2,070.30 which was paid by December 7, 1942. Thomas, individually, borrowed $800 from the same bank in May 1940 and paid the loan in January 1942. In April 1941, the corporation applied to the R.F.C. for a loan of $1,800 for the purchase and installation of two pieces of equipment. The application contained a balance sheet of the corporation as of December 31, 1940, and was accompanied by a statement of Thomas' personal assets. The corporation's financial statement showed cash on hand $1,272.81, total assets $22,353.02, current liabilities of $3,837.37 and a chattel mortgage to the R.F.C. for $3,960. Net sales for the five preceding years were stated as ranging between $25,000 and $27,000 annually. Thomas' salary was *298 stated to be $2,500 a year. The ownership interest was shown as common stock $5,000; surplus, donated, $8,438.36; and undivided profits, $1,117.29. The statement purporting to show as of April 26, 1941, all assets and liabilities of Thomas, other than his interest in the corporation, shows cash on hand $200; securities $1,660; real estate valued at $11,000 (having an assessed value of $7,000); furniture $3,000; cash surrender value of life insurance, $647; and shows liabilities of $5,150. Thomas filed an income tax return for 1940 showing no tax due. He filed no return for 1941. His return for 1942 showed a tax of $33, of which two quarterly installments were paid in March and June 1943. His return for 1943 reported a total income of $2,658 consisting of salary of $2,550 and dividends of $108. Tax withheld was greater than the tax due and a refund was made. His return for 1944 reported income of $2,652.50, consisting of salary $2,550 and interest $102.50. The petitioners' joint return for 1945 reported salary of $5,000 and dividends or interest of $500.62. Their joint return for 1946 reported salary $5,200, dividends $579.40 and interest $213.44. Their joint return for 1947 reported *299 salary $5,100, dividends $957.50 and interest $613.47. Their joint return for 1948 reported salary $4,940, dividends $1,186.61, interest of $669.80, and long-term capital gain of $80. In December 1943 Vangos made two gifts of $3,000 each for the benefit of the petitioners' two children. $2,900 of each gift was deposited in a savings account for the benefit of the child. At the beginning of 1943, Constantine Thomas had the following assets: ASSETS
Bank Accounts
Central Savings Bank-#107875
$ 50.54
Bonds
5,000.00
Securities
5 shares Radio Corp. of America
56.25
14 shares Wright Aeronautical
Corp.
992.25
90 shares Maraceabo Oil Ex. Co.
1,242.29
Loans Receivable
3,002.45
Real Estate
5,500.00
Equity in corporations-Thomas, The
Master Cleaner, Inc.
5,000.00
During the year 1943 Thomas' personal and living expenditures amounted to $2,779.40. At the end of 1943 he had assets to the value of $28,940.71 and no liabilities. During the year 1944, Thomas' personal and living expenditures amounted to $2,629.08. At the end of 1944 he had assets of $34,059.44 and liabilities of $1,494.50. At the beginning of 1945 assets of Constantine and Marie Thomas *300 amounted to $34,059.44 and their liabilities amounted to $1,494.50. During the years 1945 to 1948, inclusive, their living expenses were as shown below and their assets and liabilities as of the end of each year were as follows: Living Expenses
End of Year
during year
Assets
Liabilities
1945
$5,500.62
$ 51,222.55 $
1946
5,992.84
58,101.72
282.34
1947
6,671.07
82,274.71
5,000.00
1948
6,836.41
104,497.20
5,000.00
Thomas' interest in the corporation is valued at $5,000 in the foregoing computations of assets. At the end of 1943 his assets included loans receivable of $1,794.86. At the end of 1944 his liabilities included loans payable to the corporation amounting to $1,494.50. At the end of 1945 the petitioners had loans receivable of $1,128.79. At the end of 1946 loans payable to the corporation by the petitioners amounted to $282.34. The petitioners had loans receivable amounting to $19,868.75 at the end of 1947, and $41,325 at the end of 1948. On March 26, 1946, and on August 29, 1949, the petitioners submitted net worth statements to the Department of State, Visa Division, for the purpose of satisfying the immigration authorities *301 as to the ability of Thomas to provide financially for a relative whom he brought to the United States from Greece. The statement submitted in 1946 showed assets of a market value of $86,978.56, including $29,211.72 as book value of 99 per cent of stock of the corporation on December 31, 1945, and $1,128.79 as accounts receivable from the corporation, and no liabilities. Income for 1946 from all sources was estimated as salary of $5,000, share in profits of the corporation of $6,930, and investment income of $973.90.the statement submitted in 1949 showed assets of a market value of $123,290.47, including $25,894.04 as book value on December 31, 1948, of 99 per cent of the stock of the corporation, and $41,325 as accounts receivable from the corporation, and no liabilities. Income from 1949 from all sources was estimated as salary of $5,000, and interest or dividends amounting to $1,809.61. On the petitioners' returns for 1946, 1947 and 1948 dependency exemptions were claimed for Christo Vangos and Jatina Vangos, the parents of Marie Thomas. Thomas had unreported income of $2,718.33 for 1943, and $3,100.81 for 1944. The petitioners had unreported income for the years 1945 to 1948 *302 as follows: Year
Unreported Income
1945
$16,457.64
1946
5,235.98
1947
18,941.03
1948
21,085.86
Constantine Thomas filed false and fraudulent income tax returns for the years 1943 and 1944. A part of the deficiency for each of such years is due to fraud with intent to evade tax. Constantine and Marie Thomas filed false and fraudulent income tax returns for the years 1945, 1946, 1947 and 1948. A part of the deficiency for each of such years is due to fraud with intent to evade tax. Opinion The deficiencies were determined by the net worth method. The income was computed by measuring the ascertainable increases in net worth, plus estimated living expenses, and upon comparison with the income reported on the returns the respondent found large amounts of unreported income. Over a period of six years income reported was less than $31,000; income unreported was computed by the respondent at more than $73,000. The petitions allege that the respondent erred in adding to income amounts representing advances by Constantine Thomas to a controlled corporation. In neglecting to consider all funds in the possession of the petitioners at the beginning of the taxable *303 years, and in failing to disclose any source of the unreported income. The parties have stipulated the items of net worth of the petitioners as of the beginning of the period and as of the end of each year, except for the amount of cash on hand (as distinguished from cash in banks), and the amount of the petitioners' nondeductible expenses for each year. The issues for our decision are the amounts of cash on hand of the petitioners on January 1, 1943, and at the end of each year, whether any part of the increase in net worth is nontaxable, as in the case of a gift, and whether any part of any deficiency is due to fraud with intent to evade tax. The deficiencies were determined upon the assumption that Thomas had no cash on hand on January 1, 1943. The burden is upon the petitioners to prove the amount of cash on hand. There is no affirmative evidence from which we could find that they had any amount of cash on hand on January 1, 1943. Both petitioners testified and neither stated that they had so much as one dollar of cash on hand as of that date. They introduced testimony from which it would appear that Thomas received some $20,000 or $22,000 in about 1928 or 1929 upon withdrawal *304 from a hotel venture, that he bought and sold stocks and securities on margin, and that he merged from the stock market crash of 1929 without loss and with some profit. These transactions are too remote in time to furnish the basis for a finding that he had substantial amounts of cash on hand at the beginning of 1943. The stipulated net worth as of January 1, 1943, is $20,843.78, exclusive of cash. There is nothing to show they had more. Much more in point are statements made in connection with the corporation's application made in April 1941 for an R.F.C. loan. Thomas signed a statement purporting to show all his personal assets and liabilities other than his interest in the corporation. In this he reports cash on hand of $200, stocks of a market value of $1,660, real estate valued at $11,000 (having an assessed value of $7,000) furniture valued at $3,000, and cash surrender value of life insurance of $647. The stocks and life insurance were pledged to secure a loan for the corporation. Liabilities were given as $5,150, and individual net worth $11,357. Thomas filed no income tax return for 1941 and his return for 1942 showed a tax liability of only $33. From these circumstances *305 it appears unlikely that Thomas had any substantial amount of cash on hand at the beginning of 1943. From a comparison of the financial statements of April 1941 and the stipulated assets as of December 31, 1942, it appears that in the interval between April 1941 and the end of 1942 he had paid off liabilities of $5,150, invested $5,000 in bonds, loaned $3,000 and increased his investment in stocks. His investment in real estate was reduced from $11,000 to $5,500. The petitioners contend that their various statements of conditions are not a proper basis for determining their net worth increases, stating that in some of the statements they showed only sufficient assets to serve the purposes of the statement and that the figures are not indicative of net worth without consideration of the purpose for which they were offered. With reference to the issue of cash on hand, our sole concern with the financial statements is whether any showing of substantial amounts of cash is indicated. The petitioners do not now assert that the statement of April 1941, showing cash on hand of $200, is false, and nothing has been offered to show that there was actually more than this amount. The record *306 of Thomas' borrowings tends to deny the existence of any substantial amount of cash on hand as of January 1, 1943. In 1940 he had the corporation borrow $4,500 on an R.F.C. loan and in 1941 another $1,800 to buy and install equipment. He paid $7 per month on a compromise settlement $400 on an old bank loan. He borrowed $800 individually, in 1940. While it is conceivable that a businessman with substantial hoarded cash might borrow to maintain his credit rating, the record does not help to prove the existence of such a hoard. The record is at least equally consistent with the conclusion that he had no cash. The petitioners have shown no basis for a finding that they had any cash on hand at any of the critical dates, and accordingly we must sustain the respondent at to that matter. The petitioners testified that the parents of Marie Thomas came to live with the petitioners in 1944 and made various gifts to them from time to time. The said that Marie's father, Christo Vangos, gave them about $6,000 for the benefit of their two children. Constantine said that Vangos made several other gifts to the extent of about $25,000 on various occasions in 1945 or 1946. Marie said her father gave *307 them about two thousand dollars at the time of their marriage, later gave them $6,000 toward the education of their two children, gave them $25,000 in currency in 1944 or 1945 and made other gifts of $5,000 and $10,000. Marie said that the money for the children was deposited in the bank except for about two hundred dollars held out to buy needed clothing. Bank deposits records show two deposits of $2,900 on December 24, 1943, in accounts for the children of the petitioners. Although it is possible the deposits were made with the petitioners' money, we accept as true the testimony of the gift of $6,000 in view of this corroboration. There is no corroboration of the other gifts alleged to have been made in the taxable years. In their tax returns for 1946, 1947 and 1948, the petitioners claimed dependency exemptions for the parents of Marie Thomas. If Vangos was so affluent as to be able to give the petitioners $25,000 or more, it would seem unlikely that they were actually dependents of the petitioners. The unreported income as determined by the respondent does not amount to $25,000 in any one year. If a gift of this amount were made, the unreported income should equal that amount *308 for the year of the gift. An internal revenue agent testified that he checked the returns of the corporation in May 1949, that upon inquiring about the increase in the loans payable account he was referred to counsel, that in June 1949 he was given an unsigned statement outlining Thomas' business ventures from the early 1920's, that he made his report in August 1949 and that no mention was made to him at any time prior to the hearing of any gifts from Vangos to the petitioners. At the time of this investigation Vangos was living. Prior to the hearing he died, and it was only after his death that any representation was made to the respondent's agents that such a gift was made. We are not persuaded that there was such a gift. Except for a gift of $6,000 in 1943, we find that the unreported income was all taxable income. We have found that the unreported income for 1943 was $2,718.33 instead of $8,178.33 as computed by the respondent. For the other years the computation is to be made from the stipulated figures. The burden is upon the respondent to prove that the returns were false and fraudulent with intent to evade tax, section 1112, Internal Revenue Code of 1939. Over a period *309 of six years the petitioners reported less than one-third of their income. The amounts omitted were too great to be due to inadvertence. Where large amounts of income undoubtedly received are omitted from returns for several successive years, there is convincing evidence of fraud, warranting the 50 per cent addition to the tax. M. Rea Gano, 19 B.T.A. 518. See also Halle v. Commissioner (C.A. 2, 1949) 175 Fed. (2d) 500; Charles A. Rogers, 38 B.T.A. 16, affd. (C.A. 6, 1940) 111 Fed. (2d) 987; Arlette Coat Co., 14 T.C. 751. The additions to tax are sustained. Decisions will be entered under Rule 50.