CHARLES A. ROGERS AND LOUISE ROGERS, HUSBAND AND WIFE, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 86181.    Promulgated July 12, 1938.

*Theodore B. Benson, Esq.*, and *H. H. Timmering, Esq.*, for the petitioners.

*Jonas M. Smith, Esq.*, for the respondent.

18

OPINION.

HILL: In computing the deficiency for 1932 respondent added to the net income reported by petitioners certain credits to their accounts on the books of the M & R Canning Co. in the amount of $17,080.30, and in computing the deficiency for 1933 respondent added to the reported net income credits to petitioners' accounts on the books of the Canning Co. plus bank deposits, in the total amount of $65,072.40. Respondent likewise made a number of other adjustments to net income for both years, which are not in controversy here. Petitioners concede that all amounts added to income by respondent, representing unexplained credits and bank deposits, constitute taxable income derived by them from legitimate sources, with the exception of three items, which will be referred to and discussed hereinbelow.

Petitioners contend that respondent erred in including in income

for the years 1932 and 1933 the amounts of $1,000 and $1,400, respectively, as unexplained credits to the accounts of petitioners on the books of the Canning Co. and allege that such amounts represent money borrowed by petitioners from the Owensboro Building & Loan Association, and loaned to the Canning Co. by them.

The account of petitioner Charles A. Rogers on the books of the Canning Co. shows the following credit: "September 9, 1932, 500.00 Owensboro B. & L. Assn." The account of petitioner Louise Rogers was credited with the same amount, accompanied by similar explanation. Under date of September 18, 1933, Rogers' account was credited with $700 "B. & Loan Cks." and Mrs. Rogers' account was credited on the same date in the same amount as "B. & L. Check." The amounts were included by respondent in gross income.

Petitioner Charles A. Rogers testified that on September 9, 1932, he and his wife each had a savings account in the Owensboro Building & Loan Association in excess of $500, and, being in need of money for the Canning Co., borrowed the stated amount, using their savings accounts as collateral, and took credit therefor on the books of the Canning Co. He further testified that on September 18, 1933, the savings accounts of himself and wife were in excess of $700, and they each borrowed that amount and loaned it to the Canning Co., taking credit therefor on the company's books.

This evidence, we think, is sufficient to establish the right of petitioners to have the amounts of $1,000 and $1,400 excluded from their gross income for 1932 and 1933, respectively. Respondent's action on this point is disapproved.

The remaining item to which petitioners take exception involves the amount of $12,000 alleged to have been included in the sum of $17,582.59 credited to the account of Charles A. Rogers on the books of the Canning Co. under date of December 31, 1933, and added to income for 1933 by respondent as part of total credits of $38,827.23.

Rogers testified that during 1933 he paid out amounts in behalf of the Canning Co. for labor, and at the end of the year directed an auditor to credit his account with the total amount taken from memoranda made at the time of the payments. In November 1933 the Canning Co. obtained a loan of $12,000 from the Ontario Warehouse Co. of Chicago, evidenced by a check dated November 29, 1933. Petitioner endorsed the check and cashed it through the city collector's office. He testified that he used the city tax collector's money to pay bills for the M & R Canning Co., substituting his personal checks for the cash so taken and used, and when he received the $12,000 for the Canning Co. he used it to reimburse the tax collector's office.

Petitioner's testimony on this point is neither clear nor convincing. The memoranda which evidenced the alleged expenditures made by

the petitioner on behalf of the Canning Co. for labor and allegedly were the basis for his directions to the auditor to credit his account in the amount of $17,582.59, were not offered in evidence. Petitioner first stated that he supposed the memoranda were in the records of the Canning Co., but later admitted he did not know whether they were in existence, or what they were for "except for labor." While petitioner's account was credited with $17,582.59, it was not debited with the amount of the $12,000 check, and there is no satisfactory evidence in the record to show that the two amounts have any relation to each other. In explanation of what he did with the $12,000 check, petitioner testified that he "used it to pay some bills of mine,—I used it to take up some checks I had in the cash box of the City Clerk."

It is not all clear from the record whether the $12,000 in question constituted repayment by the Canning Co. to Rogers for expenditures made by him in its behalf or was a loan by the corporation to petitioner, or whether it was in whole or in part a distribution of earnings in the nature of a dividend. If Rogers used the money in whole or in part to pay his personal bills and not to replace funds expended in behalf of the Canning Co., the transaction to such an extent may have amounted in effect to the distribution of a dividend. In reference to this matter, petitioners in their brief say:

What petitioners desire the Board to do is consider that these withdrawals [which included the $12,000 check above referred to] were payments made by the corporation in its checks which were cashed by the petitioners then became funds available to the petitioners to later return to the corporation or to pay its bills or for deposit in the several banks.

If the funds withdrawn by petitioners from the corporation were later returned to the corporation, or used to pay its bills, they constituted in the first instance loans to petitioners; but if they were deposited by petitioners "in the several banks" and appropriated to their individual uses, they constituted dividends. Again in their brief petitioners state:

What the Board should do is simply to conclude that Rogers personally paid or promised to pay the bills of the corporation and that he then used the $12,000 to reimburse himself and that the net result is as though the bills, to the extent of the $12,000, were paid by the corporation and not by Rogers and that the final entry in the amount of $17,582.59, credited to Rogers, should be reduced by $12,000 to $5,582.59.

Respondent has determined that the amount of $12,000 in controversy constituted gross income to petitioners, and the burden is upon them to establish by competent proof that such determination is erroneous. This, we think, they have wholly failed to do. We must, therefore, approve respondent's determination on this point.

Respondent has assessed a 50 percent fraud penalty for each of the taxable years, pursuant to the provisions of section 293 (b) of the

Revenue Acts of 1932 and 1934. Petitioners contend that they were not guilty of fraud, and that respondent's action is erroneous.

Bearing on the issue of fraud, the record discloses the following facts: Petitioners concede that all amounts added to their income by respondent which represent credits to their accounts on the books of the M & R Canning Co., and deposits in banks, with the exception of the three items hereinabove referred to, constituted gross income derived by them during the taxable years from legitimate sources. They both personally signed the returns filed for 1932 and 1934, and the credits on the books of the Canning Co. and the deposits in the banks were made by petitioners personally or under their direct supervision. Yet in their returns they reported net income for 1932 in the amount of $8,913.78 and failed to report $9,834.80; for 1933, they reported only $1,942.11 net income and failed to report $42,410.15; for 1934 they reported $6,205.98 and failed to report $6,773.

The repeated omission from the returns of such large percentages of the total admitted taxable income, under circumstances indicating that petitioners at the time the returns were made knew that the omitted amounts constituted taxable income, can not be ascribed to oversight or honest error, but, we think, compels the conclusion that at least a part of the deficiency for each of the taxable years is due to fraud with intent to evade tax. In reaching this conclusion we consider only those items of gross income admitted by petitioners to have been received by them but not reported in their returns.

The explanation of such omissions offered by Rogers in his testimony was vague and contradictory. When questioned concerning specific items of gross income for 1932, he stated he did not know the sources from which they were derived, or whether or not they were loans. Later he stated "at that time we considered those were sums borrowed." In respect of the unreported items which petitioners now admit constituted gross income for 1933, Rogers testified that he did not consider that the credits on the Canning Co.'s books were profits, and later in his testimony said they represented funds borrowed from his wife.

In *Charles E. Mitchell*, 32 B. T. A. 1093, 1128, we said:

Under the revenue laws every taxpayer is, in the first instance, his own assessor. He determines the amount of tax due. This privilege carries with it a concurrent responsibility to deal frankly and honestly with the Government—to make a full revelation and fair return of all income received and to claim no deductions not legally due. This responsibility is not properly discharged by resolving all doubts against the Government, or by giving effect to studied efforts to wipe out taxable income by secret and questionable practices. It is a maxim of our law that, in dealing with the Government, taxpayers must turn square corners.

In the instant case, we can not conclude that petitioners dealt fairly and honestly with the Government. Respondent's action in assessing the fraud penalties is approved.

One further question remains for consideration. Petitioners contend that they are not jointly and severally liable for the deficiencies and penalties involved; that neither is liable for the taxes or penalties arising out of the income of the other; that the liability finally determined should be apportioned between them in accordance with the income of each. In the circumstances disclosed here, petitioners' contentions, in our opinion, must be denied.

Petitioners elected to file a joint return for each of the taxable years, and in such returns they did not state the items of income and deductions allocable to each, except that in their return for 1934, in a schedule showing computation of the earned income credit, it is stated that the net income of Mrs. Rogers was $3,759.98 (not earned), and that the net income of C. A. Rogers was $2,446 (earned). Furthermore, at the hearing petitioners offered no evidence to show the amount of the taxable net income belonging to each, other than a revenue agent's report, to which further reference will be made below; nor is any reasonable basis otherwise shown for allocation of the deficiencies and penalties. Respondent addressed the deficiency letter to petitioners jointly, and thus in effect asserted joint and several liability for the full amount of the taxes and penalties.

In the case of a joint return of husband and wife, it has been held that the wife is not liable for any part of a deficiency, if she had no income. *Cole* v. *Commissioner*, 81 Fed. (2d) 485; *Frank W. Darling*, 34 B. T. A. 1062. However, in the present proceeding it is not shown that the wife had no income; on the contrary, the record indicates that a substantial portion of the unreported income, upon which the deficiencies are predicated, belonged to the wife, but no basis has been shown for making an allocation of the *amount* of income attributable to her.

Apparently it is the contention of the petitioners that respondent has determined for each of the taxable years the amount of the net income allocable to each of them, and that such determination should be used as the basis for apportionment of the deficiencies and penalties. Certainly respondent did not indicate in the deficiency letter, nor in the statement attached thereto, the amount of the gross income and of the deductions which he attributed to each petitioner. However, petitioners offered in evidence a copy of the revenue agent's report, in connection with which their counsel stated:

The purposes of offering this exhibit are to show what the respondent has done in order to explain what appears in the notice of deficiency, which is not complete, and also for the further purpose of segregating the income of C. A. Rogers and Louise Rogers.

We have examined this report of the revenue agent, and it is not clear that any effort was made therein to segregate the income and deductions of either petitioner. In connection with explanations of changes made in the reported income, it appears incidentally that certain items either of income or deductions pertained to a particular petitioner, but the tax was computed for each year on the basis of joint net income and not segregated or apportioned income. Furthermore, while the revenue agent's report discloses unexplained credits to the accounts of each petitioner on the books of the Canning Co., and unexplained bank deposits, it was not determined that such credits and bank deposits belonged to the particular individual to whom credited, but that they constituted joint income of both petitioners. If it were assumed that the credits and bank deposits constituted income of each petitioner in the amounts appearing in their respective accounts, there are other items both of income and deductions reflected in the computations of respondent which are not questioned by petitioners and in respect of some of which at least no basis for apportionment has been shown. Such items for 1932 include dividends understated in the amount of $100; deductions overstated in the amount of $504.94, and a deduction for depletion of $170.44. For 1933 such items consisted of an allowance for depletion of $85.06, depreciation of $188, and other deductions in the total amount of $20,989.19. For 1934, respondent added to the reported joint income of petitioners "Income from business understated $1,929.75", other income understated $4,084.93, and deductions overstated on bank stock loss in the amount of $758.32.

It may be inferred from explanations contained in the revenue agent's report that certain of these items pertained to a particular petitioner, but others are wholly unexplained, and in respect of none has respondent made any allocation or segregation. It is the position of the respondent that the unexplained credits and bank deposits taken together constitute joint income; that the total deductions are joint deductions, and that the way in which the items were set up on the books is not conclusive as to how the income was actually received or as to what proportion belonged to each petitioner. We think it is clear that respondent's determinations afford no basis for apportionment of the deficiencies and penalties.

It appears that the credits to the accounts of petitioners on the books of the Canning Co. were made more or less arbitrarily, and without regard to apportionment. While Mrs. Rogers owned twice as many shares of the Canning Co.'s stock as her husband, yet on the company's books he was credited with approximately the same amount of income for 1932 as was credited to his wife, and was

credited with an amount greatly in excess of that credited to her for 1933.

It was the duty of petitioners to keep proper records of their business transactions so that the amounts of their individual taxable incomes could be; determined. This they did not do, and Charles A. Rogers testified that he did not know the source or character of the unexplained items of joint income. It is obvious, therefore, that evidence to establish a proper basis for allocation does not exist, and in these circumstances we think petitioners should not be permitted to take advantage of their own wrongdoing and deprive the Government of the taxes and penalties provided by law in such cases.

Petitioners having affirmatively raised the issue, the burden is upon them to prove a proper basis for allocation, and, in the absence of such proof, we must hold that they are jointly and severally liable. See *Anderson* v. *United States*, 48 Fed. (2d) 201; *Joseph Buchhalter*, 29 B. T. A. 600.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*

MURDOCK concurs only in the result.