Ralph B. Bates v. Commissioner.
Bates v. Commissioner
Docket Nos. 51979, 51980.
United States Tax Court
T.C. Memo 1956-12; 1956 Tax Ct. Memo LEXIS 284; 15 T.C.M. (CCH) 47; T.C.M. (RIA) 56012; January 19, 1956
*284 Held: 1. Respondent failed to establish fraud by clear and convincing evidence. Accordingly petitioner is not liable for the additions to tax because of fraud asserted for the years 1945 through 1949, 1951 and 1952. 2. The assessment and collection of the deficiencies determined for the years 1945 through 1949 are barred by the statute of limitations. 3. As petitioner failed to sustain his burden of proof the deficiencies (with some adjustments) determined for the years 1951 and 1952 are sustained. 4. Petitioner's failure to file declarations of estimated tax for the years 1951 and 1952 was due to wilful neglect and not to reasonable cause. William R. Bagby, Esq., for the petitioner Charles R. Hembree, Esq., for the respondent. BRUCE Memorandum Findings of Fact and Opinion BRUCE, Judge: Respondent has determined deficiencies in income tax, additions to tax because of fraud pursuant to section 293(b), and additions to tax for failure to file declarations of estimated tax pursuant to section 294(d)(1)(A), as follows: Additions to Tax
Sec. 294
Year
Deficiency
Sec. 293(b)
(d)(1)(A)
1945
$2,745.07
$1,372.54
1946
611.49
305.75
1947
2,183.42
1,091.71
1948
446.66
223.33
1949
1,189.54
594.77
1951
1,464.40
732.20
$175.86
1952
2,726.95
1,363.48
294.66
Respondent *285 has made a jeopardy assessment of the deficiencies and additions to tax. By amended answer respondent claims increases in the deficiencies and additions to tax because of fraud for the years 1946 and 1949 as follows: Increases
Additions to Tax
Year
Deficiency
Sec. 293(b)
1946
$994.15
$497.07
1949
572.74
286.37
The statutory notice of deficiency for the years 1948 and 1949 was mailed to Ralph B. Bates and Mae Bates as husband and wife. Mae Bates, however, did not join in the petition filed with this Court. Inasmuch as respondent concedes the necessity of certain adjustments to the net income determined in the notices of deficiency decisions under Rule 50 will be necessary. The issues in this proceeding are: 1. Whether respondent has correctly determined petitioner's taxable income for each of the years 1945 through 1949, 1951 and 1952. 2. Whether any part of the deficiency determined for each of the years reviewed is due to fraud with intent to evade tax. 3. Whether the deficiencies determined for the years 1945 through 1949 are barred by the statute of limitations. 4. If not, whether petitioner is liable for increased deficiencies for the years 1946 and 1949. 5. Whether petitioner is subject *286 to additions to tax for failure to file declarations of estimated tax for the years 1951 and 1952. Findings of Fact The petitioner is Ralph B. Bates, also known as R. B. Bates, whose residence is in Neon, Letcher County, Kentucky. For the years 1945, 1946, 1947, 1951, and 1952 petitioner filed individual income tax returns and for the years 1948 and 1949 he and his wife filed joint income tax returns. All of these returns were filed on or before their due date with the collector of internal revenue for the district of Kentucky. During the years involved petitioner received income from several business interests. In all of the years reviewed petitioner owned coal, gas, and oil rights from which he received royalties; in most of the years he had income from real estate transactions; at various times during the period he operated a grocery store; in some of the years he received rental and interest income; and from November 1948 through December 1949 he received fees while serving as a magistrate. From 1940 until April 1951 petitioner was married to Mae Nease. Petitioner and Mae separated in October 1950 and they were divorced in April 1951. Mae has since remarried and is now Mae Smith. *287 At the time of her marriage to petitioner Mae had no money or source of income and during the period of their marriage she had no money or income except that which came from him. Petitioner was born April 1, 1894 in the Kentucky mountain town of Hindman. He attended a five-month country school through the sixth or seventh grade. He has had no other formal education. His eyesight has been poor since birth and he has been crippled since 1930. From an earlier marriage petitioner has two children, Ralph, Jr., and Aileen, born in 1930 and 1932, respectively. Petitioner lived in Neon from 1926 until sometime in 1945, when he moved with his family to a farm on Camp Branch, Letcher County, Kentucky. The farm residence of the Bates family was a 50-year old four-room box house with a siding. Petitioner made no improvements in the house. In late 1945 petitioner opened a small country store in a storehouse which he built shortly after moving to the farm. The operation of the store was short-lived as he sold the storehouse and three acres of land on February 20, 1946. The farm provided petitioner with most of the food with which to feed his family and while living there it was not necessary to *288 buy many foodstuffs from a grocery store. Petitioner's only utility expense was for electricity which was never more than the minimum rate of $1.03 per month. A well provided all the necessary water and during all the years reviewed coal was used for heat. Petitioner was the lessor of several small coal mines and he was usually able to get all the coal he wanted without cost. In the latter part of 1947 petitioner moved his family back to Neon to a small second-floor flat over an old frame store and lived there during the remainder of the period involved. During the years 1947 and 1948 petitioner spent about $2,000 on remodeling and improving the flat and in each of the years 1947, 1948, and 1949 he spent $500 for furniture. Upon his return to Neon petitioner opened a grocery store which was operated until some time in 1951. Petitioner's grocery stores were supervised by Mae, in whose name they were operated. Ralph, Jr., lived with and was supported by his father during the years 1945 through 1949. In those years Ralph, Jr., earned approximately $1,250 which he used to buy clothes and for spending money. In the latter part of 1949 he moved to Detroit, Michigan, where he worked continuously *289 except for occasional lay-offs until he was inducted into the Army in December 1952. His wife, the former Nancy Polly, whom he married in 1950, also worked from time to time in Detroit. Aileen lived with her father and was dependent upon him for support during all the years reviewed. She was variously employed during the years 1947 through 1952 and earned about $220 a year. With her earnings she bought clothes and school incidentals. Eugene Bates, a nephew of petitioner, lived with and was supported by petitioner during the years 1945, 1946, and part of 1947. During the years 1945 to 1951, inclusive, Mae Bates was the sole outside source of support of her mother, Rachael Nease, and of her uncle, Manuel Macklemore. Rachael and Manuel lived on a farm belonging to Rachael and were unable to support themselves. Channeling the funds through Mae, petitioner contributed toward the support of her mother and uncle from 1947 to April 1951, inclusive. In 1951 and in each of the preceding four years petitioner gave Mae $1,000 to use for support of her relatives and for such other purposes as she desired. Mae also received money from petitioner during the years 1945 and 1946 to use as she wished, *290 including support of her mother and uncle. During the years 1944 through 1952 Mae had a checking account in the Bank of Whitesburg, Whitesburg, Kentucky. She also had a checking account in the bank of Neon, Neon, Kentucky. In addition to the sums given her by petitioner all receipts and disbursements from the grocery stores were made through these accounts. As of December 31 in each of the years 1944 through 1952 the balance of Mae's account in the Bank of Whitesburg was as follows: Year
Amount
1944
$1,300.13
1945
194.72
1946
697.11
1947
2.36
1948
2.36
1949
2.36
1950
2.36
1951
2.36
1952
2.36
Mae filed individual income tax returns for the years 1945, 1946, and 1947 and she and Ralph filed a joint return for 1950. Mae's return for 1946 discloses income from coal royalties and from a partnership, "Bates Coal Co., Polly," in the respective amounts of $3,946.09 and $1,864.41. It also lists $327.70 as net profit from "Business or profession." Her return for 1947 discloses adjusted gross income from a partnership, "R. B. Bates & Mae Bates, Neon, Ky.," in the amount of $6,629.66. For the calendar year 1946 a partnership return was filed in the name of "Bates Coal Co., Polly, Ky.," revealing a net income of $3,728.81 *291 and an equal division of that income between petitioner and his wife. A partnership return was filed for the calendar year 1947 in the name of "R. B. & Mae Bates, Neon, Ky." disclosing net income of $13,259.32 and an equal division thereof between Ralph and Mae. No partnership existed between petitioner and his wife in either of those years and none was intended by them. Mae did not receive any of the income reflected in either of these returns. Petitioner's returns, including those of his wife and the "partnerships" were prepared for him in each of the years involved. [1] D. S. Setzer prepared all of the returns filed by petitioner and Mae in the years 1946 through 1950, including the partnership returns. Setzer was not a certified public accountant but he did accounting work and was known in the community of Whitesburg, Kentucky as one who prepared income tax returns. An accountant, Jimmie Frazier, of Whitesburg prepared petitioner's returns for 1951 and 1952. Petitioner turned over to Setzer and Frazier any books and records he had and gave them all the information requested and everything he believed necessary concerning his activities. He relied completely and in good faith upon *292 their ability to properly prepare the necessary returns and documents including typewritten checks for the tax due. Petitioner and his wife executed the returns and documents prepared without reading them or questioning their correctness. Petitioner was appointed magistrate of Letcher County, Kentucky in November 1948 and served in that capacity through December 1949. As magistrate he collected fines, accounts, small debts, proceeds from attachments, and other similar official collections. His fee was $4.50 for each trial and $4.50 for each attachment collected. The officer serving the papers received $2.00 for each service. Petitioner deposited all collections, including court costs, in a separate and special bank account. During his term as magistrate petitioner deposited approximately $13,000 in this account. He issued checks to the serving officer for service fees and quarterly he remitted the fines to the Circuit Court Clerk. Petitioner kept records of his collections and expenditures as magistrate during his term. In April 1953 one of *293 respondent's agents began an investigation of petitioner's tax liability for the years 1945 through 1952. The agent asked petitioner for the books and records of his businesses. The only records made available to the agent consisted of one daybook relating to petitioner's activities as a magistrate, the retained partnership returns, and a few cancelled checks. In the absence of adequate and complete records the agent computed the net income of the petitioner for the years 1945, 1946, 1947, 1951 and 1952 and that of petitioner and his wife for the years 1948 and 1949 by the net worth plus personal expenditures method as follows: NET WORTH OF RALPH B. BATES
Dec. 31,
Dec. 31,
Dec. 31,
Dec. 31,
ASSETS
1944
1945
1946
1947
Cash on Hand
Cash in Banks: -
Bank of Whitesburg: Checking Account - Ralph
$ 4,092.44
$10,653.45
$ 8,212.45
$ 4,859.29
Bates, Jr.
Bates Coal Co.
4,704.79
Savings Account
Checking Account
Bank of Neon - Checking
5,294.83
Account
Inventory
2,792.11
Stock - Bank of Neon
2,000.00
U.S. Bonds
56.25
56.25
56.25
5,306.25
Real Estate
9,507.00
11,557.00
16,995.00
17,515.00
Automobile
500.00
500.00
1,180.75
2,000.00
Note Receivable
Total Assets
$14,155.69
$22,766.70
$31,149.24
$39,767.48
LIABILITIES
Note Payable (Bank of
$ 500.00
$ 100.00
$ 2,210.00
$ 1,440.00
Whitesburg)
Reserve for Depreciation and
500.00
600.00
942.50
1,428.28
Depletion
Mortgage Payable
Total Liabilities
$ 1,000.00
$ 700.00
$ 3,152.50
$ 2,868.28
NET WORTH
$13,155.69
$22,066.70
$27,996.74
$36,899.20
Increase in Net Worth
$ 8,911.01
$ 5,930.04
$ 8,902.46
Add: - Estimated Living
3,000.00
3,000.00
3,000.00
Expenses
Federal Income Taxes Paid
22.00
1,839.75
Less: - Capital Gains
Adjustment (per return)
Standard Deduction
(500.00)
(500.00)
(500.00)
Corrected Net Income
$11,411.01
$ 8,452.04
$13,242.21
Reported
1,375.00 a
6,045.99 a
6,129.66 a
Adjustment
$10,036.01
$ 2,406.05
$ 7,112.55
*294 NET WORTH OF RALPH B. BATES
Dec. 31,
Dec. 31,
Dec. 31,
ASSETS
1950
1951
1952
Cash on Hand
$ 2,000.00
$ 2,000.00
Cash in Banks: -
Bank of Whitesburg: Checking Account - Ralph
Bates, Jr.
Bates Coal Co.
Savings Account
$11,539.87
Checking Account
79.71
1,686.72
Bank of Neon - Checking
1,046.85
4,217.95
5,486.51
Account
Inventory
4,882.09
Stock - Bank of Neon
U.S. Bonds
5,287.50
37.50
1,875.00
Real Estate
20,320.00
49,010.00
89,010.00
Automobile
2,000.00
2,000.00
2,000.00
Note Receivable
2,422.71
2,422.71
2,422.71
Total Assets
$47,499.02
$59,767.87
$104,480.94
LIABILITIES
Note Payable (Bank of
$ 2,100.00
Whitesburg)
Reserve for Depreciation and
$ 3,078.03
3,470.96
$ 4,061.96
Depletion
Mortgage Payable
35,000.00
Total Liabilities
$ 3,078.03
$ 5,570.96
$ 39,061.96
NET WORTH
$44,420.99
$54,196.91
$ 65,418.98
Increase in Net Worth
$ 9,775.92
$ 11,222.07
Add: - Estimated Living
3,000.00
3,000.00
Expenses
Federal Income Taxes Paid
171.00
489.43
Less: - Capital Gains
(2,896.48)
(905.75)
Adjustment (per return)
Standard Deduction
(1,000.00)
(1,000.00)
Corrected Net Income
$ 9,050.44
$ 12,805.75
Reported
3,603.60 a
3,618.96 a
Adjustment
$ 5,446.84
$ 9,186.79
NET WORTH STATEMENT OF RALPH B. AND MAE BATES
Dec. 31,
Dec. 31,
Dec. 31,
Dec. 31,
1947
1948
1949
1950
ASSETS
Cash on Hand
$ 4,000.00
Cash in Banks: Bank of Whitesburg: Checking Account -
$ 4,859.29
$ 1,120.21
$ 5,897.56
Ralph Bates, Jr.
Savings Account - Ralph
11,539.87
B. Bates
Checking Account - Mae
2.36
2.36
2.36
2.36
Bates
Bank of Neon: Checking Account -
5,294.83
5,091.39
5,807.18
1,046.85
Ralph B. Bates
Checking Account - R.
527.92
3,092.91
B. Bates, Jr., J.P.
Checking Account - Mae
336.68
9.58
295.56
Bates
Inventory
2,792.11
4,792.11
5,115.22
4,882.09
Stock - Bank of Neon
2,000.00
2,000.00
2,000.00
U.S. Bonds
5,306.25
5,306.25
5,287.50
5,287.50
Real Estate
17,515.00
21,870.00
20,320.00
20,320.00
Automobile
2,000.00
2,000.00
2,000.00
2,000.00
Mine Equipment
1,322.71
2,422.71
Note Receivable
2,422.71
Total Assets
$40,106.52
$44,042.53
$52,241.00
$51,501.38
LIABILITIES
Note Payable - Bank of
$ 1,440.00
Whitesburg
Reserve for
Depreciation and
Depletion per
return
1,428.28
$ 2,886.16
$ 3,848.11
$ 3,078.03
Total Liabilities
$ 2,868.28
$ 2,886.16
$ 3,848.11
$ 3,078.03
NET WORTH
$37,238.24
$41,156.37
$48,392.89
$48,423.35
Increase in Net Worth
$ 3,918.13
$ 7,236.52
$ 30.46
Add: Estimated Living
4,000.00
4,000.00
3,708.36
Expenses
Federal Income Taxes
1,907.04
78.00
379.92
Paid
Less: Standard
(982.52)
(1,000.00)
*
Deduction
Net Income Corrected
$ 8,842.65
$10,314.52
$ 4,118.74
Reported
4,526.14 b, c
2,796.66 b
4,118.74
Adjustment
$ 4,316.51
$ 7,517.86
*295 Included in the net worth statement for the years 1945 through 1949 is the item "Checking Account - R. B. Bates, Jr." This account was the property of petitioner. It was opened in the Whitesburg Bank by petitioner in the name of his son in 1935 because of the divorce of petitioner and his first wife in that year. Petitioner discontinued this account in 1949. Ralph, Jr. never had any money of his own in this account and did not know that his father maintained an account in his name in the Whitesburg Bank. In the net worth as of December 31, 1952 are "United States Bonds" in the amount of $1,875. These bonds were purchased by Ralph, Jr. with money he and his wife earned during their employment in Detroit. The petitioner supplied no part of the funds used in the purchase of these bonds and they were neither purchased in his name nor at any time owned by him. Petitioner *296 owned automobiles and trucks during the years 1945 through 1952 which were used partly for purposes of his business and partly for nonbusiness purposes. Most of the time petitioner had just one automobile or pickup truck for transportation and as petitioner was unable to drive because of his infirmities these vehicles were driven by Mae and his children. Deductions for depreciation of these vehicles were taken in petitioner's returns (including the joint returns) for the years 1948 through 1952 and in the partnership return for 1947. A reasonable allowance for depreciation on these vehicles because of their use in petitioner's business for each of the years 1947 through 1952 is as follows: 1947
$100
1948
100
1949
100
1950
$100
1951
58
1952
58
The depreciation and depletion allowed by respondent in the net worth statement as additions to the "reserve for depreciation and depletion" and the depreciation and depletion claimed in the individual returns of Ralph Bates and Mae Bates in their joint returns, and in the partnership returns are as follows: The bracketed items were not allowed by respondent as additions to the Reserve for Depreciation and Depletion. The unbracketed ones were allowed. Ralph B. Bates
Ralph and
Mae Bates
(Joint)
Returns
1945 * *297 1946
1947
1948
Coal Royalties (102A)
$197.80
$452.50
Gas and Oil Royalties
145.20
25.15
Motor Vehicles
400.00
Coal Mining Equip-
ment: Hoist, Cable and
Tools
418.00
Steel Track
162.23
Other Mining Equip-
ment
Stone Building
Mae Bates
Coal Royalties (102A)
(197.30)
Partnership
Motor Vehicles
(537.48) **
($400.00)
Coal Depletion
(823.97)
Gas Royalties
485.78
(505.77)
Ralph and Mae
Ralph B. Bates
Bates (Joint)
Returns
1949
1950
1951
1952
Coal Royalties (102A)
$ 68.81
Gas and Oil Royalties
267.09
$142.93
$142.93
$ 91.00
Motor Vehicles
(400.00)
(400.00)
(232.62) ***
(232.62) ***
Coal Mining Equip-
ment: Hoist, Cable and
Tools
418.00
(418.00)
Steel Track
162.23
(162.23)
Other Mining Equip-
ment
45.82
(275.00)
Stone Building
250.00
500.00
Mae Bates
Coal Royalties (102A)
Partnership
Motor Vehicles
Coal Depletion
Gas Royalties Respondent determined that the mining equipment for which petitioner and his wife claimed a deduction for depreciation in their joint return for 1950 was sold in that year. He accordingly eliminated the equipment as an asset, disallowed the deduction, and eliminated the accumulated depreciation on that equipment from the "reserve for depreciation and depletion" as of December 31, 1950. The 1950 return listed the cost and purchase date of this equipment as follows: Date Acquired
Cost
Hoist & Cable
1-1948
$ 836.00
Steele Railing
1-1948
486.71
Other Mine Equipment
11-1-1949
1,100.00
*298 This equipment was not sold by petitioner in 1950 and was still owned by him as of December 31, 1952. No deductions for depreciation were claimed, however, with respect to this equipment in petitioner's returns for 1951 and 1952. Income from the rental of box houses and frame and stone buildings was reported in petitioner's returns for 1946, 1951, and 1952 and in the joint returns for 1948, 1949, and 1950. Except for 1951 and 1952 when he claimed deductions for the stone building, petitioner did not claim deductions for depreciation of these rental properties. In determining petitioner's real estate holdings denominated as "Real Estate" in the net worth statement respondent's agent included the following: Date
Acquired
1944-5-6
1947
1948
1949
1950
1951
1952
Whitaker
Property
1950 *
$1,000
$1,000
Improvement to
1947-8
$1,000
$2,000
$2,000
$2,000
$2,000
$2,000
Store (Apt.)
Furniture
1948
1,000
1,000
1,000
1,000
1,000
Petitioner had real estate holdings (including improvements and furniture) as of December 31 in each of the years 1944 through 1952 as follows: Date
1944
1945
1946
1947
Grantor
Acquired
Ison Sloan
9- 40
$ 45
$ 45
$ 45
$ 45
Noah Bentley
2- 4-37
500
500
Essie Quillen
4- 3-44
1,500
Elbert Ward
11-23-42
2,000
Dave Blevins
4-19-43
320
320
320
320
John Niece
2- 2-44
3,500
5,900
2,700
2,700
Everett Howell
1- 2-48
Mayme Taylor
7-19-46
2,635
600
Roosevelt Johnson
9-29-47
1,750
George Holland
11- 5-48
Nancy Collins
8-11-47
3,840
John Caudill
12- 8-45
1,550
1,500
1,550
Usley Frazier
5-25-46
6,500
6,500
S. J. Bates
7-27-46
2,000
1,500
G. B. Johnson
1948
Tandy Craft
1948
Roy Profit
1952
N. J. Lucas
1952
Aaron Lucas
1951
D. R. Hollin
1951
Tourist Court
1952
Improvements to Store
1947-8
1,000
(Apt.)
Furniture
1947-8-9
500
Totals
$7,865
$8,315
$15,750
$20,305
*299 1948
1949
1950
1951
1952
Grantor
Ison Sloan
$ 45.00
$ 45.00
$ 45.00
$ 45.00
$ 45.00
Noah Bentley
Essie Quillen
Elbert Ward
Dave Blevins
John Niece
1,300.00
1,300.00
1,300.00
1,300.00
1,300.00
Everett Howell
4,700.00
1,650.00
1,650.00
1,650.00
1,650.00
Mayme Taylor
600.00
600.00
600.00
1,200.00
1,200.00
Roosevelt Johnson
1,750.00
1,750.00
1,750.00
George Holland
300.00
300.00
300.00
300.00
Nancy Collins
3,840.00
3,840.00
3,840.00
3,840.00
3,840.00
John Caudill
1,162.50
1,162.50
1,962.50
1,962.50
1,962.50
Usley Frazier
6,500.00
6,500.00
6,500.00
6,500.00
6,500.00
S. J. Bates
1,500.00
1,500.00
1,500.00
1,500.00
1,500.00
G. B. Johnson
2,500.00
2,500.00
2,500.00
2,500.00
2,500.00
Tandy Craft
400.00
400.00
400.00
400.00
400.00
Roy Profit
400.00
N. J. Lucas
350.00
Aaron Lucas
300.00
300.00
D. R. Hollin
25,000.00
25,000.00
Tourist Court
4,000.00
Improvements to Store
2,000.00
2,000.00
2,000.00
1,500.00
1,500.00
(Apt.)
Furniture
1,000.00
1,500.00
1,500.00
1,500.00
1,500.00
Totals
$27,597.50
$25,047.50
$25,847.50
$49,997.50
$90,447.50 As petitioner kept no record of his real estate transactions respondent's agent in determining the deficiencies herein did not allow him the benefit of any long-term capital gains realized from such dealings. During the years 1945 through 1952 petitioner realized long-term *300 capital gains and losses from real estate transactions as follows: Grantee
1945
1946
1947
1948
1949
1951
1952
Anna Abdoo
$4,250
Delmar & Mable Caudill
$800
Roy Crawford
$ 465
L & N R.R. Co. (S. J. Bates
2,350
property)
Marion Hall
$ 180.00
L & N R.R. Co. (Niece
5,100.00
property)
L & N R.R. Co. (Caudill
612.50
property)
Thornton Baptist Church
( $550)
Sampie McKinney
$300
Verna Lucas
$400
Totals
$4,250
$800
$2,815
$5,892.50
( $550)
$300
$400
These gains were not reported in any of the years involved. In 1943 petitioner consulted his attorney of twenty-five years, D. I. ("Doug") Day, of Whitesburg with reference to reporting gains realized in real estate transactions. Petitioner was advised that there was no tax on such gains and that he did not have to report them. Day had no tax practice and refused to handle any tax work when requested. Petitioner was similarly advised by the person who prepared his 1945 return. Thereafter petitioner was convinced that he did not have to report real estate gains and for that reason he did not give Setzer or Frazier any information about these gains and they did not inquire about such gains. It was not until the latter part of 1952, sometime prior to the preparation of his 1952 return, *301 that petitioner learned he had to report real estate gains. On his 1952 return petitioner reported a short-term gain from the sale of a dwelling in the amount of $1,100. He did not report, however, any long-term gain realized in that year from real estate transactions. At the close of each of the years 1944 through 1952 petitioner owned notes receivable arising out of the sale of real estate as follows: Payor
Interest
1944
1945
1946
1947
L. C. Stapleton
6%
$250
Clifford Morgan
None
$500
Otis Hall
None
$ 75
Delmar Caudill
6%
2,500
Marion Hall
6%
Thornton Baptist
Church
None
Totals
$250
$500
$2,575
0
Payor
1948
1949
1950
1951
1952
L. C. Stapleton
Clifford Morgan
Otis Hall
Delmar Caudill
Marion Hall
$495
$ 396
$ 297
$ 198
$99
Thornton Baptist
Church
2,300
2,300
1,200
Totals
$495
$2,696
$2,597
$1,398
$99 Respondent did not include any of these notes in the net worth computation. Petitioner was not always paid the interest due on these notes. Petitioner had cash on hand at December 31, 1944 in the amount of $500. During the years 1945 through 1952 petitioner and his family had living expenses (not including the sums expended for furniture in the years 1947, 1948, and 1949) as follows: 1945
$1,200
1946
1,000
1947
1,700
1948
2,100
1949
$2,000
1950
1,670
1951
1,500
1952
1,500
*302 The sums given to Mae in the years 1945 to 1951, inclusive, including the $1,000 given to her in each of the years 1947 to 1951, inclusive, to use for support of her mother and uncle and in any other way she desired were in addition to these living expenses. During all of the years involved petitioner lived in a small coal mining community in the Kentucky mountains. His family did little or no traveling and the entertainment offered in this area was extremely limited. Petitioner had no life insurance during these years and, as he lived on properties which he owned, he incurred no expense for rent. In addition during all the years he lived in Neon petitioner received for the consumption of his family produce from his farms. At no time was any of the produce sold by petitioner either personally or through his grocery stores. Petitioner is entitled to dependency credits for his son, daughter, and nephew, Eugene, and exemptions for his wife and himself for the year 1945. On his 1951 return petitioner claimed a dependency credit for his daughter and an exemption for himself. He reported inventory as of December 31, 1951 in the amount of $2,221.03. In his returns for 1946 and 1947 and in *303 their joint returns for 1948 and 1949 petitioner (and his wife) elected to take the optional standard deduction. In his returns for 1951 and 1952 petitioner itemized deductions totaling $1,095.17 [2] and $1,328.76, respectively. The statutory notices of deficiency for all of the years involved were mailed November 16, 1953. Petitioner's failure to file declarations of estimated tax for the years 1951 and 1952 was due to wilful neglect and not to reasonable cause. Opinion Respondent determined the deficiencies herein by reconstructing the net income of the petitioner for the years 1945, 1946, 1947, 1951, and 1952 and that of petitioner and his wife for the years 1948 and 1949 by the net worth plus personal expenditures method. He determined that petitioner was liable for additions to tax because of fraud for each of the years involved and for additions to tax for failure to file declarations of estimated tax for the years 1951 and 1952. The parties are in agreement that the assessment and collection of the deficiencies for the years 1945 through 1949 are barred by the statute of limitations unless the returns *304 filed therefor were false or fraudulent with intent to evade tax. Section 276 (a), Internal Revenue Code of 1939. Similarly petitioner is not liable for the additions to tax determined for each of those years unless some part of the deficiency is due to fraud with intent to evade tax. Section 293 (b), Internal Revenue Code of 1939. Where, as here, fraud is not admitted, the burden rests upon the respondent to prove fraud by clear and convincing evidence. Section 1112, Internal Revenue Code of 1939, Henry S. Kerbaugh, 29 B.T.A. 1014, affd. 74 Fed. (2d) 749. Respondent bases his claim of fraud on large and consistent understatements of income, citing Rogers v. Commissioner, 111 Fed. (2d) 987, affirming 38 B.T.A. 16, and Arlette Coat Co., 14 T.C. 751. He also relies upon the fact that petitioner filed partnership returns for the years 1946 and 1947 when in fact there was no partnership. As proof of large and consistent understatements of income respondent relies upon the large discrepancies between reported income and that determined by him in the net worth statement. Respondent offered no proof with respect to many of the items contained in the net worth statement. Accordingly, *305 this contention must be rejected for it is well settled that the Commissioner cannot sustain his burden of proof as to fraud by the mere assertion in his notice of deficiency of large and consistent understatements of income. Oscar G. Joseph, 32 B.T.A. 1192; cf. C. A. Reis, 1 T.C. 9. The cases cited by respondent are distinguishable. The holding in each is based upon the entire record and not upon omission of income alone. In Rogers v. Commissioner, supra, in addition to the omissions there were circumstances which indicated that the taxpayer knew the omitted amounts constituted taxable income. In Arlette Coat Co., supra, the Commissioner introduced separate and independent evidence to establish gross understatements in reported taxable income. Similarly respondent gains no support from the fact that petitioner filed partnership returns for the years 1946 and 1947 showing a part of his income taxable to his wife. Respondent is correct in asserting that a taxpayer cannot shift the responsibility of filing correct returns to an agent. The responsibility must be borne by the taxpayer. The return is his. However, the failure to file a correct return does not necessarily constitute *306 fraud. Fraud implies bad faith, intentional wrongdoing and a sinister motive. It is never imputed or presumed and the ordinary preponderance of evidence is not sufficient to establish its existence. Henry S. Kerbaugh, supra; Arthur M. Godwin, 34 B.T.A. 485; Davis v. Commissioner, 184 Fed. (2d) 86. Petitioner lived in a small mountain community. His eyes were poor and his limbs infirm. His education totaled not more than thirty-five months in a country school. He sought aid in the preparation of his returns from individuals whom he believed to be qualified to render such services. He relied so completely upon these persons to properly prepare his returns that he did not read the documents before signing them. He was unaware that he had filed partnership returns for 1946 and 1947. In our view, however unwise or improper petitioner's conduct may have been, there has been no showing that it was motivated by an intent to defraud. Likewise petitioner's failure to report capital gains from his real estate transactions was not the result of bad faith. He was advised by his attorney of twenty-five years and by the individual who prepared his return for 1945 that those gains were not taxable. *307 The record is silent as to the identity and qualifications of the individual consulted in 1945 and there is proof that petitioner's attorney was unfamiliar with the intricacies of the Federal income tax law. However that may be, petitioner relied in good faith upon their advice and the omission of these gains was not inspired by a desire to cheat the Government out of its lawful revenue. We have carefully reviewed the record and are satisfied that respondent has failed to establish that any part of the deficiency determined for each of the years 1945 through 1949 was due to fraud with intent to evade tax, or that any of the returns filed therefor were false or fraudulent with intent to evade tax. Accordingly the additions to tax imposed for those years are not sustained and the assessment and collection of the deficiencies determined for such years are barred by the statute of limitations. Respondent has also failed to prove that petitioner omitted from gross income an amount in excess of 25 per cent of the gross income reported for 1948 and 1949 which would have invoked the limitation provision of section 275(c). Accordingly, the bar to the assessment and collection of the deficiencies *308 determined for these years is not lifted. We next consider whether respondent has correctly determined petitioner's income for the years 1951 and 1952. Petitioner challenges the propriety of resorting to the net worth method of determining income under the circumstances here present. He contends that the books and records used in preparing the returns for the years involved clearly reflect his net income and therefore the Commissioner is precluded by section 41, Internal Revenue Code of 1939, from recomputing that income. Respondent's agent testified that he asked for all of petitioner's records and that the only records made available by petitioner were one daybook relating to petitioner's activities as a magistrate, the retained partnership returns, and a few cancelled checks. Petitioner testified that these were the only records requested and that his other records, to which he referred several times, were never solicited. When questioned as to the location of these other records petitioner responded that some were in the courtroom and some were "at home." He offered no further proof of their existence and the records themselves were never offered in evidence. Accordingly, we cannot *309 find that the Commissioner erred in failing to accept as correct the receipts reported by petitioner in his returns. Gasper v. Commissioner, - Fed. (2d) - (C.A. 6) (July 6, 1955). Petitioner offered no proof with respect to many of the items in the net worth statement; and, as to some of the other items the parties are in agreement that certain adjustments are proper. Our findings are largely dispositive of the contentions of the parties; however, brief comment on some of the items in controversy may be helpful. Cash on Hand Petitioner argues that respondent erred in determining his increase in net worth for the years involved by failing to include in the net worth cash on hand at the close of each of the years 1944 through 1952. We have found that petitioner had cash on hand as of December 31, 1944 in the amount of $500. There is no proof as to what amount of cash, if any, was on hand at the close of each of the other years, including 1950, 1951, and 1952. Accordingly, further adjustment in the net worth computation with respect to this item would be improper. Petitioner argues further that the amount of $4,000 included as "Cash on Hand" in the joint net worth of Ralph and Mae Bates *310 at December 31, 1950 was improperly eliminated from the individual net worth of petitioner as of that date. Specifically petitioner points out that there was no evidence that Mae had $4,000 cash on hand at December 31, 1950 and therefore, the amount included in their joint net worth as of that date was the property of Ralph and should be included in his individual net worth. The petitioner correctly asserts that the record is silent with respect to the cash on hand of Mae Bates as of December 31, 1950, and as we have indicated it is equally silent with respect to Ralph. The computation of the joint net worth of petitioner and his wife as of December 31, 1950 did not enter into the determination of the deficiencies involved in the instant proceeding. Therefore we are unable to find that respondent's determination for the year 1951 is erroneous upon its face and upon the state of this record we can only conclude that the computation of petitioner's individual net worth as of December 31, 1950 with respect to "Cash on Hand" is not in error. Inventory - Automobile - Itemized and Standard Deductions Petitioner contends that respondent erred in having a zero figure for inventory in the *311 net worth at December 31, 1951, whereas his return for 1951 reveals a closing inventory in the amount of $2,221.03. No evidence on this point was offered except the return for 1951 which is insufficient to set aside respondent's determination. Petitioner's income tax return is a self-serving declaration and may not be accepted as proof of inventory merely because it is claimed. Watab Paper Co., 27 B.T.A. 488; Louis Halle, 7 T.C. 245, affd. 175 Fed. (2d) 500, certiorari denied 338 U.S. 949. For the same reason we are unable to find error in the item "Automobile" or that petitioner is entitled to the deductions itemized in his returns for 1951 and 1952 rather than to the standard deduction as allowed by respondent. Reserve for Depreciation and Depletion The depreciation and depletion allowable in the years 1945 through 1950 is reflected in the reserve for depreciation and depletion as of December 31, 1951 and 1952 and accordingly, must be determined along with the amounts allowable in 1951 and 1952. Respondent concedes, there being no partnership between petitioner and his wife in the years 1946 and 1947, that coal depletion in the amount of $823.97 and depletion of gas royalties *312 in the full amount of $991.55 ($485.78 plus $505.77) claimed in the partnership returns for the years 1946 and 1947, respectively, should be added to the reserve. Petitioner has failed to establish that he is entitled to any greater amount for coal depletion in 1946. We think that respondent erred in eliminating as an asset the mining equipment for which a deduction was claimed in the joint return for 1950, in failing to allow the deduction and in eliminating from the reserve as of December 31, 1950 the accumulated depreciation thereon. [3] Petitioner did not sell this equipment in 1950 and was still possessed of it at December 31, 1952. Petitioner contends that he is entitled to deductions for depreciation of his automobile in the amounts claimed on his returns (including the joint returns) for the years 1948 through *313 1952 and on the partnership return for 1947. By amended answer and on brief respondent seeks to disallow the amount claimed by petitioner on his 1948 return as auto depreciation, and, which respondent allowed in his net worth computation as an addition to the reserve. We have found that petitioner's vehicles were used for both business and nonbusiness purposes. No evidence was offered as to what proportion of their use was for business as opposed to nonbusiness purposes and no satisfactory evidence as to their cost, date of purchase or probable useful life was introduced. See Watab Paper Co., supra. Therefore, bearing heavily on petitioner who is responsible for the uncertainty, we have found, under the principles of Cohan v. Commissioner, 39 Fed. (2d) 540, a reasonable allowance for depreciation of motor vehicles for each of the years 1947 through 1952 to be as follows: 1947
$100
1948
100
1949
100
1950
$100
1951
58
1952
58
Petitioner reported income in 1951 and 1952 from the rental of frame buildings. He claimed no deduction for depreciation of these buildings. On brief, however, petitioner urges that we apply Cohan v. Commissioner, supra, and find that he was entitled to deductions for depreciation *314 of these buildings in the amount of $250 for 1951 and $200 for 1952. Any such finding on our part would be the sheerest fantasy. There is not one shred of evidence upon which we might base such a determination. For all we know the buildings may be fully depreciated. The returns themselves contain no declaration as to the cost, purchase date, life, etc., of these buildings. Cf. Walter M. Joyce, 25 T.C. 13 (October 14, 1955). Living Expenses We have found that petitioner had living expenses in each of the years 1951 and 1952 in the amount of $1,500. In addition he gave Mae $1,000 in 1951, which amount, for purposes of the net worth computation may be included in his living expenses for that year. Dependency Credits On his return for 1951 petitioner claimed a dependency credit for his daughter and an exemption for himself. He now claims dependency credits for that year for Mae's mother and uncle. An uncle by marriage of the taxpayer does not qualify as a dependent of that taxpayer under section 25(b)(3), Internal Revenue Code of 1939. Clarence E. Koester, 23 T.C. 515. Whether Rachael's relationship by affinity to petitioner, under Kentucky law, was terminated by his divorce from *315 Mae without children born or surviving, so as to remove her from the permitted class of dependents provided by section 25(b) of the Internal Revenue Code of 1939, it is unnecessary to determine. See, however, Steele v. Suwalski, 75 Fed. (2d) 885; Adams v. Reed, (Ky.) 38 S.W. 420; Regs. 111, sec. 29.25-3(b). Petitioner has failed to establish that he contributed more than one-half her support in 1951, particularly in view of the fact that all his contributions toward her support in previous years had been channeled through his wife and he and Mae separated in October 1950 and were divorced in April 1951. Nor is there any showing as to what use Mae put the $1,000 given her by petitioner in 1951. Fraud Our comments with respect to the additions to tax because of fraud for the years 1945 through 1949 are equally applicable to the additions to tax because of fraud determined for the years 1951 and 1952. Accordingly, we hold that petitioner is not liable for the additions to tax because of fraud imposed for these years. Declarations of Estimated Tax In our view petitioner has not proven that his failure to file declarations of estimated tax for the years 1951 and 1952 was due to reasonable *316 cause rather than to wilful neglect and, accordingly, he is liable for additions to tax pursuant to section 294 (b)(1)(A), Internal Revenue Code of 1939. Petitioner relies on the fact that he turned over to an accountant the preparation of his tax returns for these years, contending that this fact shields him from the additions to tax. For such fact to be a defense it must appear that petitioner consulted a qualified tax counsel who was acquainted with all the facts and that petitioner relied on such counsel. Rene R. Bouche, 18 T.C. 144. The record shows only that petitioner employed an accountant to prepare his returns. It fails entirely to show that the accountant was a competent tax advisor. Decisions will be entered under Rule 50. Footnotes
1. Petitioner was unable to remember the identity of the person who prepared his return for 1945 and there was no further evidence on this point.↩
a. Net Income.↩
*. Tax computed by table in 1950. ↩
b. Adjusted gross income. ↩
c. Petitioner and his wife reported in their return for 1948 gross income in the amount of $4,526.14 on which they paid a tax of $78. Thereafter on December 7, 1950 petitioner paid an additional $379.92 in taxes on a recomputed adjusted gross income in the amount of $7,064.95.↩
*. Petitioner's 1945 return was not offered in evidence and there was no proof as to the amount of depreciation or depletion in 1945. However, the net worth as of December 31, 1945 discloses that respondent allowed $100 as a deduction for depreciation and depletion in that year and petitioner does not dispute this amount. **. The motor vehicles for which this depreciation was indicated were sold in 1946. ↩
***. In a schedule included in his returns for these years petitioner computed depreciation on his automoble to be $465.25 per year ($1,861 cost spread over a four-year life). He claimed only one-half of this amount as a depreciation deduction in each of these years.↩
*. On brief respondent gives this date as 1951.↩
2. A separate schedule attached to the return lists this amount as $1,095.07.↩
3. The joint return for 1950 lists the cost of this equipment as $2,422.71. There is no evidence on the point; however, respondent apparently concluded that the equipment was sold on credit and accordingly included in the net worth as of December 31, 1950 "Note Receivable" in the amount of $2,422.71. If that be the case appropriate adjustment should be made on recomputation.↩