Daniel C. Devany v. Commissioner.
Devany v. Commissioner
Docket No. 63783.
United States Tax Court
T.C. Memo 1959-8; 1959 Tax Ct. Memo LEXIS 240; 18 T.C.M. (CCH) 53; T.C.M. (RIA) 59008; January 22, 1959
*240 Clarence P. Brazill, Jr., Esq., for the respondent. TRAIN
Memorandum Findings of Fact and Opinion TRAIN, Judge: Respondent determined deficiencies in income tax and additions to tax against petitioner in the years and in the amounts as follows: Additions to Tax
Year
Deficiency
Sec. 293(b)
Sec. 294(d)(2)
1949
$3,653.87
$1,826.94
$230.75
1950
1,347.46
673.73
92.80
As there was no appearance on behalf of petitioner at the trial, the Court granted respondent's motion for judgment with respect to the deficiencies and the additions to tax under section 294(d)(2) of the Internal Revenue Code of 1939 in accordance with the statutory notice, reserving entry of decision until final disposition of the case. The only issue remaining for decision is whether any part of the deficiencies for each of the years 1949 and 1950 was due to fraud with intent to evade tax. Findings of Fact The petitioner, Daniel C. Devany, resided during 1949 and 1950 at Yonkers, New York. He filed timely individual income tax returns for each of those years, the return for the year 1949 being filed with the collector of internal revenue for the third district *241 of New York. During the years 1949 and 1950, the petitioner, who is now deceased, operated a lunch room at Yonkers, New York, under the name of Riverdale Lunch, received rental income from a building located at 9 New High Street, Yonkers, and also engaged in business and received income as a "commission broker." The term "commission broker" was used by the petitioner on his returns for 1949 and 1950 to describe a portion of his business activities and is a term used by bookmakers and others engaged in gambling enterprises to describe the sources of income from gambling activities. The petitioner was engaged in gambling activities during 1949 and 1950. The petitioner kept meager and inadequate records of his business activities for the years 1949 and 1950. His tax returns were prepared by his accountant, David C. Brenner, by means of a net worth plus expenditures method. Brenner estimated petitioner's income by including as income: (a) living expenses as furnished by petitioner, (b) expenditures for cars, medical bills, trips to Florida, etc., (c) deposits in bank accounts, and (d) any other expenditure or saving noted by Brenner. He then analyzed the total savings and expenditures *242 thus determined in order to eliminate duplications. Under this method, net expenditures, net savings, and net investments made in any one year were deemed by Brenner to arise from earnings in that year and were allocated by him to the various sources of income reported by petitioner. During 1948, 1949, and 1950, the petitioner had the following assets on hand at the close of each year: 1948
1949
1950
Pan American Bank (Miami)
$ 400.00
$ 96.35
First National Bank of Miami
650.00
1,160.10
Yonkers Savings Bank
$1,637.46
2,576.85
2,936.63
Stocks
790.00
Riverdale Lunch property
8,000.00
8,000.00
9 New School Street Property
4,250.00
4,250.00
4,250.00
TOTAL ASSETS
$5,887.46
$15,876.85
$17,233.08
During 1948, 1949, and 1950, the petitioner had the following liabilities at the close of each year: 1948
1949
1950
Industrial Bank of Commerce (loan)
$2,501.36
9 New School Street (Mortgage)
$1,650.00
1,050.00
$450.00
TOTAL LIABILITIES
$1,650.00
$3,551.36
$450.00
The petitioner expended the following amounts for cost of living in 1948, 1949, and 1950, in accordance with the following schedule: *243 1948
1949
1950
Rent
$ 588.00
$ 588.00
$ 588.00
Garage
335.00
420.00
420.00
Metropolitan Life Insurance
Policy #6-840-773C
33.96
33.96
33.96
Policy #6-958-351C
60.60
60.60
60.60
Policy #2-755-287M
33.24
33.24
33.14
Continental Assurance Co.
#353501
218.50
218.50
218.50
#353502
218.50
218.50
218.50
Household and car insurance pre-
mium
104.10
150.80
156.80
1949 Buick automobile
1,168.25
Furniture (Dee Furniture Store,
Yonkers)
279.50
Loan to Eddie Mickle
1,000.00
Florida trips
550.00
1,200.00
1,800.00
Estimated tax and Federal tax paid
with return
400.00
1,195.55
891.94
Medical expense
1,265.37
387.25
New York State income tax
90.00
94.83
90.00
Estimated expenditures for other ex-
penses
2,600.00
2,600.00
2,600.00
TOTAL
$5,231.90
$10,247.60
$7,778.19
The respondent allowed adjustments with respect to depreciation in 1948, 1949, and 1950, in the amount of $187.50, $587.50, and $987.50, respectively. From the foregoing facts, petitioner's taxable income and unreported income for the taxable years 1949 and 1950 are as follows: 1948
1949
1950
Assets
$5,887.46
$15,876.85
$17,233.08
Liabilities
1,650.00
3,551.36
450.00
Net Worth
$4,237.46
$12,325.49
$16,783.08
$ 4,237.46
$12,325.49
Increase in Net Worth
$ 8,088.03
$ 4,457.59
Plus Cost of Living
10,247.60
7,778.19
$18,335.63
$12,235.78
Less: Depreciation
587.50
987.50
$17,748.13
$11,248.28
Income Reported
7,063.00
6,485.86
Unreported Income
$10,685.13
$ 4,762.42
*244 No part of the deficiency for either 1949 or 1950 was due to fraud with intent to evade and defeat payment of tax. Opinion The instant case involves determinations of taxable income by the respondent through use of the increase in net worth plus expenditures method. At the trial, the Court granted respondent's motion for judgment in the amounts of the deficiencies set out in the statutory notice and in the amount of the additions to tax under section 294(d)(2) of the 1939 Code due to the failure on the part of the petitioner to properly prosecute. However, since fraud was asserted in the statutory notice with respect to both taxable years involved, the respondent has the burden of proof as to the fraud penalty. We recognize that to establish fraud by direct proof of intention is seldom possible and that usually such intention must be gleaned from circumstances and acts. The respondent relies upon the following facts as establishing fraudulent intent: 1. The increase in net worth and the expenditures were fully proved in each of the years; 2. Petitioner was engaged in an illegal operation, namely, the numbers or policy rackets; 3. Petitioner was engaged in various other *245 income-producing activities, namely, operation of a lunch room and renting realty; 4. Petitioner did not maintain books or records which would reveal his activities and income; 5. Petitioner omitted substantial amounts of income in the taxable years 1949 and 1950. In support of his contention that he has met his burden of proof, respondent cites Arlette Coat Co., 14 T.C. 751 (1950), and Rogers v. Commissioner, 111 Fed. (2d) 987 (C.A. 6, 1940), affirming 38 B.T.A. 16 (1938). In Arlette Coat Co., we declared: "Where over a course of years an intelligent taxpayer and business man has received income in substantial amounts, as shown by this record, and has failed to report that income, and where no books or records were kept by him and no tenable explanation was offered for the failure to report the income received, the burden of the respondent, in our judgment, is fully met. * * *" In Rogers v. Commissioner, supra, the Circuit Court of Appeals for the Sixth Circuit stated: "Discrepancies of 100% and more between the real net income and the reported income for three successive years strongly evidence an intent to defraud the *246 Government. * * *" Nevertheless, on the meager record before us here, we are unable to conclude, as respondent contends on brief, that petitioner "knew what he was doing, and yet he persisted in such a course of conduct in complete disregard of the circumstances." There is no evidence whatsoever as to the intelligence or education of the petitioner who is deceased. We know nothing of any of the details of any of his business activities. The primary indicia of fraud here are the fact of unreported income over a period of two years, the fact of very inadequate books and records, and the fact that illegal activities represented a source of part of petitioner's income. Under the circumstances of this case, we are unable to spell out from these facts alone clear and convincing evidence of intent to evade tax, and we conclude that respondent has failed to carry his burden of proof as to the fraud penalty. Decision will be entered under Rule 50.